*In re* LIC. HUGO RUBÉN FÉLIX, querellado.

Número: O-80-529     Resuelto: 2 de noviembre de 1981

*Héctor A. Colón Cruz, Procurador General, y Eliadís Orsini Zayas, Procuradora General Auxiliar,* como querellantes; *Enrique González,* abogado del querellado.

PER CURIAM:   Damián Olmo Bigio contrató los servicios del Lic. Hugo Rubén Félix para que lo representara en una acción civil sobre división de comunidad en la cual posteriormente se dictó sentencia disponiéndose, entre

otras cosas, que Olmo Bigio pagara cierta suma de dinero. A tales efectos, el 21 de noviembre de 1978 le entregó al querellado, Lic. Hugo Rubén Félix, cheque certificado de $3,820 expedido a la orden de Juan Olmo Bigio para que lo depositara en el tribunal y cumplir, según su creencia, con la sentencia.

Así las cosas, al cabo de un año el Lic. Rubén Félix volvió a solicitarle a Damián Olmo Bigio dinero justificando su petición con que la satisfacción de la referida sentencia requería una cantidad mayor. Ante tal información Damián se dirigió al Banco que expidió el cheque original. Allí le entregaron copia advirtiendo que aparecía endosado y cambiado por Damián Olmo Bigio. Subsiguientemente se dirigió al Lic. Félix, le informó sobre el particular y éste aceptó que lo había cambiado sin su permiso y que lo había usado para su propio beneficio, por lo cual le daría un pagaré que respondiera por la suma indicada. Ese pagaré de fecha 12 de junio de 1979, lo preparó y entregó el querellado Rubén Félix a su cliente Damián Olmo Bigio. El día 18 de octubre de 1979 éste compareció a querellarse ante el Procurador General por razón de que el pagaré no había sido satisfecho en su totalidad a pesar de haber vencido el 8 de agosto de 1979. En septiembre de 1979 el querellado Hugo Rubén Félix sólo le había devuelto la suma que se había apropiado, pero sin los intereses pactados y adeudados.

Oportunamente el Procurador General presentó querella disciplinaria contra el abogado Hugo Rubén Félix. Designamos como Comisionado Especial al ex Juez Superior Hon. Ramón Pérez de Jesús para que lo ventilara. La prueba fue estipulada y el abogado admitió todo el cargo.(¹)

Es de rigor anotar que la admisión por el querellado Hugo Rubén Félix del cargo imputádole es una circuns-

---

(¹) Ante el Comisionado el Procurador desistió de otro cargo.

tancia que ante la gravedad ética de su conducta no puede servir de eximente. Ya en *In re Félix*, 104 D.P.R. 379, 380 (1975), —ante el cargo de haber faltado a la Ley Notarial al autenticar en un documento la firma de una persona para él desconocida que no lo suscribió en su presencia— adoptó igual postura y recibió una sanción disciplinaria mínima al afirmarnos ". . . su adhesión a las normas correctas durante los subsiguientes años de ejercicio". Veamos.

En el caso de autos el querellado engañó a su cliente e incurrió en los siguientes actos antiéticos: (1) solicitó y obtuvo el dinero bajo la falsa representación de que serían destinados a satisfacer la sentencia; (2) sin autorización ni conocimiento del cliente falsificó la firma; (3) cambió el cheque indebidamente en el banco; (4) se apropió de su importe y lo usó para fines personales; (5) con igual propósito al cabo de un año exige más dinero del cliente; (6) no honró el pagaré fechado 12 de junio de 1979 —vencido el 8 de agosto de 1979— hasta después que el cliente se queja el 18 de octubre ante el Procurador General, quien el 24 de ese mes le notifica la misma.

La excusa para tan flagrante violación ética consistió en que "[p]ara fines de 1977 y principios de 1978 el querellado estuvo enfermo y su trabajo e ingresos se redujeron sustancialmente. Para esa época, tenía una hija estudiando medicina en la Universidad del Este de la República Dominicana y, para fines de 1978, ella tenía que pagar alrededor de $4,000.00 de matrícula para poder continuar sus estudios". Si bien el querellado entiende que al apropiarse de los fondos lo hizo para una causa meritoria, ello no es óbice para que no sea considerada su acción como una apropiación ilegal, por lo que no puede ser factor eximente para evitar la suspensión del ejercicio de la abogacía.

Agrava más aún la conducta del querellado el que cerca de un año después de perpetrado el primer engaño y falsa representación intenta obtener indebidamente más

dinero de su cliente, y así se lo solicita, bajo el espurio pretexto de que la sentencia no había sido satisfecha en su totalidad. Adviértase que en ese momento ya no existía tal ahogo económico.

En la dimensión de la deontología profesional, la confianza entre abogado y cliente, en particular, el escrupuloso manejo de fondos, constituye elemento inseparable que se proyecta no sólo dentro del foro togado puertorriqueño, sino en el respeto y estima ante la imagen pública. *In re Báez Torres*, 108 D.P.R. 358 (1979). Como se dijo en *In re Vázquez Báez*, 110 D.P.R. 628 (1981):

> En un procedimiento de desaforo la remisión de la culpa no surte efecto de inmersión en el río sagrado que lava el pecado porque el perdón es signo de nobleza en quien lo otorga, *mas no necesariamente de enmienda en quien lo recibe.* Sin embargo, podrá tomarse como atenuante en el grado de severidad con que esta sociedad, y la profesión jurídica en particular, deben ser desagraviadas. *En el caso de este abogado, el perdón no alcanza a subsanar el dañoso efecto acumulativo de la serie de actos que informan su comportamiento.* (Énfasis nuestro.)

Así ocurre en el caso que nos ocupa. Condonar la conducta del abogado bajo la tesis de que su cliente le mantiene confianza es simplemente renunciar y entregar la jurisdicción disciplinaria de este foro a criterios individuales, sabios o no, sacrificando intereses públicos de alta calidad. *En consecuencia se dictará sentencia decretando su separación indefinida del ejercicio de la abogacía y el notariado. Si en el futuro el querellado estimare que ha reformado su conducta de tal forma que lo haga acreedor a ser admitido nuevamente al ejercicio de la profesión, podrá solicitar la consideración de su readmisión al ejercicio de su profesión. In re Báez Torres,* supra.

El Juez Asociado Señor Díaz Cruz emitió opinión concurrente y disidente en parte. El Juez Presidente Señor Trías Monge no intervino.

—O—

Opinión concurrente y disidente en parte del Juez Asociado Señor Díaz Cruz.

El querellado Hugo Rubén Félix, abogado del demandado Damián Olmo en pleito sobre división de comunidad, solicitó y obtuvo de su cliente la suma de $3,820 bajo representación de que se destinaban a satisfacer la sentencia. El cliente le entregó cheque certificado a la orden del demandante y el abogado, sin autorización ni conocimiento de una u otra parte endosó el cheque firmando el nombre del demandante Juan Olmo y convirtió su importe para su personal uso. Cerca de un año después, solicitó más dinero de su cliente con el pretexto de que la sentencia no había sido satisfecha en su totalidad,(¹) y es entonces que el cliente va al banco que expidió el cheque y se enteró del falso endoso y desviación de los fondos. Confrontado el abogado con la revelación de su operación bancaria, dejó a su cliente satisfecho con un pagaré por la misma cantidad de $3,820 para el 8 de agosto de 1979, con interés al 10% anual. En septiembre de ese año el querellado pagó el principal del pagaré, sin intereses y la deficiencia en esa partida accesoria desencadenó este proceso al presentarse el cliente en octubre de 1979 con su queja a la oficina del Procurador General.

Estos hechos fueron objeto del cargo único en la querella ventilada ante el Comisionado especial Sr. Ramón Pérez de Jesús, cargo que fue admitido en su totalidad por el abogado, con la explicación, que mereció crédito al juzgador de hechos, (Conclusión Núm. 8 del Informe) de que a fines de 1977 y principios de 1978 estuvo enfermo, su labor profesional y sus ingresos decayeron sustancialmente, infortunio que coincidió con la necesidad de pagar

---

(¹) A la fecha de la audiencia ante el Comisionado, estaba todavía por determinar el valor de la tierra en contienda y con ello el importe líquido de lo que debía pagarse el demandante en satisfacción de sentencia.

$4,000 de derechos de matrícula de una hija estudiante de medicina; que para este solo fin utilizó el dinero de su cliente. Justificó la restitución, sin intereses, con la información de que no había un contrato de servicios profesionales, que el pleito de división de comunidad no había terminado y continuaba representando a su cliente el demandado Damián Olmo en éste, y en otros asuntos por lo que saldaría los intereses con labor profesional. El cliente acompañó al querellado a la vista y estuvo presente durante su testimonio, aunque ninguna de las partes lo llamó como su testigo.

La querella se funda en el Canon 23 de Ética en su declaración de que la naturaleza fiduciaria de las relaciones entre abogado y cliente las exige fundadas en la *honradez absoluta;* y que debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a posesión del abogado, sin confundirlos o mezclarlos con sus bienes propios; y en el Canon 18 que impone al abogado la obligación ética de diligencia y saber en la defensa de los intereses de su cliente, debiendo actuar "en aquella forma que la profesión jurídica en general estima adecuada y responsable".

La reacción del querellado en todas las etapas de este procedimiento ha sido de candor y honesta admisión de los hechos. No intentó tender cortinas de humo, sino que confesó la flaqueza de su integridad ante la perentoria necesidad económica de su hija. Coincidimos con el criterio del señor Comisionado que la explicación del querellado podría atenuar mas no excusar de un todo su conducta. Mas no podemos colocarnos en plano de absoluta abstracción y olvidarnos que el fracaso y la adversidad agobian al hombre que los resiste con la relativa fortaleza de sus principios. Los hechos no nos convencen de que el querellado se haya deteriorado en su fibra moral al punto de que deba sufrir una sanción extrema. Todavía mantiene la confianza de su cliente.

No ha habido, por tanto, extinción de la relación de

abogado y cliente; por el contrario el continuado nexo profesional es evidencia de convalidación o ratificación de las actuaciones del abogado que usó propiedad de su cliente para atender obligaciones personales perentorias. Recuérdese que el cliente lleva su queja al Procurador General como simple recurso para cobrar *los intereses* del pagaré. Una vez asegurado el pago de dichos intereses continúa una relación normal con su abogado a quien sigue confiando su representación en éste y otros asuntos. Si la imputación de conducta no tolerada equivalente a apropiación ilegal fuera sincera, lo primero que hubiese resultado vulnerado y escindido radicalmente sería el vínculo contractual de esencial contenido de confianza que define la relación de abogado y cliente. Con su continuada retención del querellado como su abogado, con su presencia junto a éste durante toda la audiencia ante el Comisionado especial, el cliente que no lo ha despedido sino confirmado su fe en él, personifica la más patente impugnación del dictamen de mayoría que separa al abogado de la profesión indefinidamente. El desenlace inexplicable es que el Tribunal, que no puede estar al tanto de las especiales relaciones y acuerdos que rigen los negocios entre estas dos personas, pasa por alto una ratificación por conducta explícita, y condena al abogado al ostracismo del término indefinido. Considero que la mayoría evade los hechos del caso al perseguir abstracciones y rígidas clasificaciones de faltas éticas, en un campo donde los elementos subjetivos de la relación abogado-cliente son determinantes.

El Canon 23 de Ética Profesional infringido por el querellado ordena: "La naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la honradez absoluta. En particular, debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y no debe mezclarlos con sus propios bienes ni permitir que se mezclen."

Del texto citado surge la relevancia de entender las

relaciones fiduciarias entre abogado y cliente en este caso, definidas principalmente por la ratificación por el cliente de la conducta del abogado al punto de retenerlo y conservarlo como su representante legal. Aceptamos que esa convalidación y preservación de confianza no alcanza el punto de exoneración frente a la exigencia de honradez *absoluta,* mas insistimos en que disminuye la falta del abogado y en consecuencia excluye la sanción extrema dictada por la mayoría. En nuestro orden social, si el querellado fuera un simple apoderado la extralimitación hubiese sido totalmente borrada por la ratificación del mandante. La regulación ética de la conducta profesional que trasciende en su severidad la contratación privada y que no queda satisfecha con la reconciliación de las partes, debe, sin embargo, atemperarse en sus efectos, y especialmente, en la sanción disciplinaria, a las circunstancias eximentes que afloran en la relación particular entre abogado y cliente. Fue la conveniencia privada de una parte en cobrar un balance de intereses lo que engendró este caso de ética. "Existe la posibilidad de que se subvierta el propósito de los Cánones cuando se esgrimen por partes en contienda como armas procesales."(²)

En la evaluación ética la severidad de la sanción disciplinaria no debe exceder la gravedad esencialmente circunstancial de la falta. En nuestra profesión la separación por tiempo indefinido es la pena capital reservada para casos prima facie irredimibles. Rehuso sacrificar seres humanos en altar de abstracciones.

Limitaría la sanción de la conducta profesional del querellado a un año de suspensión en el ejercicio de la abogacía.

---

(²) Preámbulo del proyecto final de Cánones Uniformes de Conducta Profesional sometido el 30 mayo, 1981 por la Comisión especial de la Asociación Americana de Abogados.