*In re* PEDRO J. PEREIRA ESTEVES, querellado.

*Números:* CP-96-8
AB-96-105

*Resueltos:* 30 de noviembre de 1998

*Carlos Lugo Fiol, Procurador General, Edda Serrano Blasini, Subprocuradora General,* e *Yvonne Casanova Pelosi, Procuradora General Auxiliar,* querellantes; *Demetrio Fernández Quiñones,* abogado del querellado; *Flavio E. Cumpiano Villamor,* Comisionado Especial.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

I

El 12 de julio de 1996, el Procurador General formuló una querella contra el Lcdo. Pedro J. Pereira Esteves —admitido a la abogacía y notaría el 3 y 29 de enero de 1974, respectivamente— imputándole violación a los Cánones 23, 35 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. El 6 de junio de 1997, tras varios incidentes procesales[1] y previa autorización, el Procurador General enmendó la querella. Añadió, como cuarto cargo, violar las disposiciones del Criterio General que regula los deberes del abogado para con los tribunales y su compromiso con la

---

[1] El 21 de junio ordenamos presentar la correspondiente querella. El 18 de septiembre el licenciado Pereira Esteves contestó. El 20, nombramos Comisionado Especial al Hon. Flavio E. Cumpiano Villamor, ex Juez Superior.

buena marcha del proceso judicial. Como resultado, se le imputó una nueva y distinta querella sobre infracciones al Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, y a los Cánones 35 y 38, *supra*.[2]

Luego del trámite usual y vista evidenciaria, el Comisionado Especial rindió su informe. A base de éste, los siguientes hechos quedaron probados.

## II

### A. *Querella CP-96-8 (AB-95-74)*

En 1979, Dulce M. Merced González contrató al licenciado Pereira Esteves para un caso de expropiación de una propiedad perteneciente a Doña Adela González Vda. de Merced y la Sucesión de Don José Isabel Merced, compuesta por la viuda Adela González y seis (6) hijos: Dulce M., José F. (Tito), Carlos M. y Marta B., todos de apellidos Merced González, Gabriel A. Merced Arroyo y José A. Merced Zabala, estos dos últimos nacidos fuera del matrimonio en 1956 y 1964, respectivamente. Al asumir la representación, el licenciado Pereira Esteves no conocía a Carlos M., Gabriel A. ni a José A. *Tampoco sabía que este último era menor de edad.* Se comunicaba sólo con Tito, a quien consideraba "representante de la sucesión".

Tras haber sido debidamente emplazados por el Estado, el licenciado Pereira Esteves compareció al tribunal e indicó que deseaba retirar, bajo protesta, los fondos consignados. El tribunal requirió copia de la declaratoria de herederos y relevo de contribuciones sobre herencia.[3]

Así las cosas, el 1ro de abril de 1980 el Tribunal Superior autorizó expedir siete (7) cheques; uno (1) por quince mil quinientos cuarenta y cuatro dólares con treinta centa-

---

[2] El 30 de mayo de 1997 ordenamos consolidarla con la original.

[3] El licenciado Pereira Esteves gestionó y obtuvo dichos documentos a través de Tito. *De la declaración de herederos surge que para la fecha de su expedición, José Alberto Merced Zabala tenía seis (6) años de edad.*

vos ($15,544.30) a favor de la viuda Adela González, y otros seis (6) a favor de los seis (6) hijos del causante, cada uno por dos mil quinientos ochenta dólares con setenta y un centavos ($2,580.71). Ordenó su entrega por conducto del licenciado Pereira Esteves, quien los entregó a Tito. Éste los distribuyó a sus destinatarios, excepto los de Gabriel Antonio Merced Arroyo y José Alberto Merced Zabala, los cuales devolvió al licenciado Pereira Esteves. Tito se comunicó con Gabriel Antonio y Doña Carmen Julia Zabala —madre de José Alberto Merced Zabala, de quince años y medio (15½) para esa fecha— y les indicó que fueran a la oficina del licenciado Pereira Esteves a buscar el dinero que les correspondía producto de la expropiación.

Gabriel Antonio acudió a la oficina, endosó el cheque y lo entregó al licenciado Pereira Esteves. Éste lo cambió y entregó dos mil dólares ($2,000) a Gabriel Antonio, *reteniendo quinientos noventa dólares con setenta y un centavos ($590.71)*. Por su parte, Doña Carmen Julia también fue a recoger el cheque y, *por instrucciones del licenciado Pereira Esteves, lo endosó con el nombre de su hijo*. El licenciado Pereira Esteves salió de la oficina con el cheque, lo endosó y cambió en efectivo. Entregó dos mil dólares ($2,000) a Doña Carmen y *retuvo los restantes quinientos noventa dólares con setenta y un centavos ($590.71)*.

Tras cierta inactividad, y luego de varios apercibimientos, se celebró una conferencia con antelación al juicio en el caso de expropiación, *en la cual el licenciado Pereira Esteves y el Estado transaron una compensación adicional de nueve mil setecientos ochenta y siete dólares con setenta y un centavos ($9,787.71)*.[4] Consecuentemente, el tribunal remitió al licenciado Pereira Esteves siete (7) cheques, uno por cuatro mil novecientos treinta y cuatro dólares con dieciséis centavos ($4,934.16) a favor de la viuda Adela González y otros seis (6) por ochocientos veintidós con treinta y seis centavos ($822.36) para cada uno de los hijos del

---

[4] Suscribieron el acuerdo *el 4 de octubre de 1983*.

causante. *Tito fue el único miembro de la sucesión enterado de estos acuerdos, así como de la compensación adicional concedida. El licenciado Pereira Esteves nunca se lo comunicó a los demás.*

Para esa fecha, el licenciado Pereira Esteves compartía oficina —sin ser socios— con el Lcdo. Josué E. Maldonado Casillas, a quien pidió que le ayudara a cambiar los cheques. Alegó tener la autorización de sus clientes para endosarlos y cambiarlos. Ambos habían hecho este tipo de operación previamente, debido a las relaciones comerciales del licenciado Maldonado Casillas con una institución bancaria. Acudieron al Banco y el licenciado Pereira Esteves le entregó los cheques al licenciado Maldonado Casillas,[5] quien los endosó con el nombre de las personas a quienes se emitían, firmó con su nombre y anotó debajo el número de su cuenta.

Los cheques no se depositaron en la cuenta del licenciado Maldonado Casillas, sino que se cambiaron en efectivo, con el cual el licenciado Pereira Esteves adquirió cheques de gerente por determinadas cantidades a favor de cada uno de los miembros de la sucesión.[6] Retuvo una parte en concepto de honorarios.

El licenciado Pereira Esteves entregó los cheques de gerente a Tito, así como la sentencia emitida el 16 de noviembre de 1983 por la Sala de Expropiaciones. *Se desconoce el destino final de dichos cheques, aunque sí se sabe que ni Doña Adela González Vda. de Mercedes ni ningún otro heredero —excepto Tito— recibió el dinero.* Años después, Tito murió y su hermana, Dulce María, encontró copia de la

---

[5] Estaban emitidos por la Secretaria de la Sala de Expropiaciones contra su cuenta ubicada en el mismo Banco donde el licenciado Maldonado Casillas tenía su cuenta.

[6] Proveyó toda la información para la emisión de los cheques de gerente y fue él quien los recibió, además del efectivo. Aunque el licenciado *Maldonado Casillas no recibió dinero alguno por participar*, es censurable el haber endosado los referidos cheques.

sentencia que adjudicaba la compensación adicional por la expropiación. Al inquirir en la agencia expropiante y en el tribunal, vieron por vez primera los cheques emitidos a su favor, endosados con firma distinta a la de ellos.

B. *Querella AB-96-105*

El 22 de agosto de 1984 se formuló una querella por conducta antiética contra el licenciado Pereira Esteves, *representado por el Lcdo. Barney López Toro*. Desde entonces, el licenciado Pereira Esteves compartía y participaba en algunos casos con los licenciados López Toro y Acosta Grubb. El 4 de septiembre de 1992 *suspendimos al licenciado Pereira Esteves por dos (2) años del ejercicio de la abogacía y notaría*. Poco después, se desligó de la oficina del licenciado López Toro, aunque la visitaba esporádicamente para realizar algunos trabajos, entre ellos: negociar asuntos de un cliente suyo, preparar y redactar proyectos de contratos y *escrituras, así como escrituras finales, las cuales otorgaba como notario el licenciado López Toro, debido a la suspensión del licenciado Pereira Esteves.*

Para agosto de 1994, poco antes de vencer el período de suspensión, el licenciado Pereira Esteves trasladó residencia al Barrio Jagüeyes de Aguas Buenas, donde habilitó su oficina. El 5 de septiembre, *sin que lo hubiéramos reinstalado, comenzó a ejercer nuevamente la profesión*. Sin embargo, por no haberse verificado su reinstalación mediante documento fehaciente, los funcionarios de los tribunales tenían órdenes de rechazar sus documentos.

Así las cosas, a mediados de febrero de 1995, la Sra. Rosita Peluyera Maldonado *contrató los servicios del licenciado Pereira Esteves* en un caso de daños y perjuicios, por un incidente ocurrido el 6 de febrero de 1995, en que su hija de ocho (8) años sufrió quemaduras en distintas áreas del cuerpo mientras se encontraba en la Escuela Jagüeyes Abajo de Aguas Buenas. Dos (2) semanas después, la se-

ñora Peluyera Maldonado le entregó los expedientes médicos de la niña. No volvieron a reunirse.(⁷)

En enero de 1996, días antes de que el licenciado López Toro otorgara una escritura de un cliente del licenciado Pereira Esteves, éste lo llamó y le habló del caso —próximo a prescribir— sin darle detalles. Le informó, además, los problemas que enfrentaba en los tribunales para que aceptaran sus escritos. El licenciado López Toro le indicó que si tenía problemas y no le aceptaban la demanda con su firma, que usara su nombre —López Toro— y él lo firmaba y así, aparecía como abogado de expediente hasta que el licenciado Pereira Esteves pudiese asumir la representación legal.

El licenciado Pereira Esteves redactó la demanda, puso su nombre y la firmó, haciendo constar su dirección postal y teléfono de Aguas Buenas. El 5 de febrero de 1996, un día antes de concluir el término prescriptivo de un (1) año para presentar la demanda, un representante del licenciado Pereira Esteves acudió a la Secretaría del Tribunal Superior de Caguas a presentarla. La secretaria de presentaciones, al cotejar y verificar que el licenciado Pereira Esteves aparecía aún suspendido, rechazó el documento. Esa misma mañana, el licenciado Pereira Esteves *sustituyó la última página con otra que contenía el nombre y número de colegiado del licenciado López Toro. Así modificada y firmada con el nombre del licenciado López Toro, logró presentarla con el Núm. 96–0028.* Ese mismo día se emitieron los emplazamientos, con el nombre del licenciado López Toro, pero la dirección del licenciado Pereira Esteves.

---

(⁷) El 18 de julio de 1995, el Tribunal de Primera Instancia nos inquirió —mediante resolución— si el licenciado Pereira Esteves estaba autorizado a ejercer la profesión, toda vez que había comparecido en representación de un imputado. En respuesta, requerimos al licenciado Pereira Esteves que se expresara. El 28 de diciembre archivamos el incidente.

El 25 de enero de 1996, mediante moción, el licenciado Pereira Esteves nos solicitó que aclaráramos si dicho archivo significaba que podía retornar a la práctica. El 9 de febrero expresamos que en efecto, implícitamente le habíamos autorizado a ejercer la profesión. No obstante, hasta esta fecha, subsistió la duda de si podía o no ejercer.

El licenciado Pereira Esteves no discutió los hechos ni méritos del caso con el licenciado López Toro, ni le informó del contenido de la demanda. Tampoco le anticipó o ratificó que, en efecto, habría de presentar la demanda bajo su nombre ni le solicitó que la firmara después que su propio nombre y propia firma fueran rechazados. El licenciado López Toro desconocía que se había presentado una demanda en la que él aparecía como abogado del demandante, firmada supuestamente por él.

Posteriormente, se diligenció el emplazamiento con copia de la demanda al Secretario de Justicia, siendo remitidos a la División de Litigios, dirigida entonces por la licenciada López Ortiz, hija del licenciado López Toro. Enterada de la demanda firmada por su padre, *con oficina en Aguas Buenas*, llevó copia al licenciado López Toro. Descubrieron que la dirección y el número telefónico eran del licenciado Pereira Esteves. Ante tal situación, el licenciado López Toro compareció por escrito al Tribunal de Primera Instancia, Sala de Caguas, y solicitó que se eliminara su nombre como representante legal de la demandante, pues nunca compareció como tal. Por su parte, la licenciada López Ortiz solicitó al secretario auxiliar de litigios que investigara las actuaciones del licenciado Pereira Esteves.

El 22 de agosto de 1996, el Procurador General le escribió a la señora Peluyera Maldonado indicándole que se había presentado una demanda a su nombre en la cual aparece como abogado el Lcdo. Barney López Toro, quien negó serlo. Al recibir la carta, fue donde el licenciado Pereira Esteves, quien le manifestó que era un error y que él contestaría. El licenciado Pereira Esteves preparó una carta dirigida a la Subprocuradora General, consignando que "[e]n relación a la carta que me enviara yo ya hice una declaración la cual en su momento se la hará llegar. Muchas gracias". I.C.E., pág. 25. *Se la dio a la señora Peluyera Maldonado para que la firmara* y la remitió a la Oficina del Procurador General. *Ese mismo día*, el licenciado Pereira

Esteves *preparó otra carta en la que indicó que* "[r]elacionado con la carta que me enviara debo indicarle que con mi permiso, consentimiento y conocimiento y también con el del abogado Barney H. López Toro, la demanda que dice fue preparada ya que caducaba el tiempo y perdía el derecho. Después el abogado Pedro J. Pereira se unía a la misma. No conozco al abogado López, pero a pedido de Pereira él lo aprobó y yo estuve de acuerdo". I.C.E., pág. 25. La dio a firmar a la señora Peluyera Maldonado.

La señora Peluyera Maldonado fue citada a prestar declaración jurada y no compareció. A petición del Procurador General, el 3 de diciembre de 1996, el tribunal le ordenó comparecer. En reacción, el licenciado Pereira Esteves escribió a la Oficina del Procurador General indicando que la citación era innecesaria, pues le remitía *una declaración de ella. Acompañó la carta preparada por él y firmada por la señora Peluyera Maldonado.*

El 14 de febrero de 1997, la señora Peluyera Maldonado compareció ante el Procurador General y *bajo juramento testificó que no conocía ni conoce al licenciado López Toro, que contrató sólo al licenciado Pereira Esteves; no autorizó ni tenía conocimiento que el licenciado López Toro sería su abogado; que el licenciado Pereira Esteves no había vuelto a comunicarse con ella ni le ha aclarado lo relativo a su representación del caso, ni el estado del caso en instancia.*[8]

## III

El Criterio General regulador de los deberes del abogado para con los tribunales, responsabiliza a todo miembro de la profesión legal por la buena marcha del proceso judicial del país, y en la consecución de ese fin, le requiere realizar todas las gestiones propias y legales que estén a su alcance.

---

[8] En términos análogos prestó testimonio ante el Comisionado Especial, Hon. Cumpiano Villamor.

■ Por su parte y, en lo pertinente, el Canon 23 del Código de Ética Profesional, *supra*, establece que "[l]a naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la *honradez absoluta*. En particular, debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y *no debe mezclarlos con sus propios bienes ni permitir que se mezclen*". (Énfasis suplido.) Es sancionable la retención de fondos de los clientes, aunque no haya habido la intención de apropiárselos y se devuelvan. *In re Vázquez O'Neill*, 121 D.P.R. 623 (1988). De igual forma, constituye violación a este canon, el que un abogado *disponga impropiamente de cualquier suma de dinero* perteneciente a su cliente. *In re Ávila, Jr.*, 109 D.P.R. 440 (1980); *In re Roldán Figueroa*, 106 D.P.R. 4 (1977).

■ En *In re Cardona Vázquez*, 108 D.P.R. 6 (1978), desaforamos a un abogado que retiró de un tribunal un cheque de su cliente, *lo endosó fraudulentamente*, y luego depositó en su cuenta personal. Advertimos que la devolución del monto de dicho cheque al cliente no excusaba su conducta inmoral e ilegal. Reiteramos que es altamente reprochable —e ilegal— endosar un cheque, sin el conocimiento ni consentimiento de la persona a favor de quien se gira, falsificando su nombre. *In re Maldonado Soto*, 83 D.P.R. 444 (1961).

■ Aun en circunstancias en que un cliente acuerde pagar honorarios tan pronto reciba dinero en su caso, no se justifica que, para cobrarlos, el abogado sin su consentimiento, endose los cheques pertenecientes a éste, falsificando así su firma y cobrando sus honorarios. Esta forma impropia e ilegal de actuar viola, sin lugar a dudas, las disposiciones del Canon 23 del Código de Ética Profesional, *supra*. *In re Fernández Paoli*, 141 D.P.R. 10 (1996); *In re Morales Soto*, 134 D.P.R. 1012 (1994); *In re Vázquez O'Neill*, supra; *In re Félix*, 111 D.P.R. 671 (1981); *In re Maldonado Soto*, supra.

La conducta del licenciado Pereira Esteves —en la primera querella— demuestra un claro menosprecio de los principios dimanantes de las normas éticas descritas. Retuvo y dispuso impropiamente parte del dinero de sus clientes al cambiar los cheques, sin que éstos tuvieran oportunidad de conocer y consentir sobre la cantidad de dinero retenida en concepto de honorarios. Peor aún, en la segunda emisión de cheques, los endosó y cambió fraudulentamente, sin conocimiento y consentimiento de sus clientes.

■ Constituyó una crasa inobservancia de las normas éticas y legales el que descansara en uno de los miembros de la sucesión, alegando incorrectamente que era el representante. Conocía —debió conocer— que la sucesión no es persona jurídica separada de sus componentes. Faltó así a su deber de informar a todos sus clientes —miembros de la sucesión— las incidencias y el desarrollo del caso, propiciando que el dinero en efectivo, producto de la segunda emisión de cheques, no llegara a manos de sus legítimos dueños.(9) *In re Morales Soto*, supra; *In re Acosta Grubb*, 119 D.P.R. 595 (1987); *Colón Prieto v. Géigel*, 115 D.P.R. 232 (1984); *In re Pagán Ayala*, 109 D.P.R. 712 (1980); *In re Cardona Vázquez*, supra.

■ En relación con el menor, es evidente que luego de obtener y facilitarle al tribunal los documentos requeridos para poder retirar los primeros cheques, el licenciado Pereira Esteves *advino en conocimiento de su minoridad.* Sin embargo, nuevamente faltó a su deber de informar, esta vez al tribunal, ese hecho. Contrario a la normativa sobre fondos judiciales pertenecientes a menores, el licenciado Pereira Esteves *llegó a un acuerdo transaccional con el Estado, sin que el tribunal tuviera oportunidad de pasar juicio sobre los intereses del menor. In re Guzmán*, 80

---

(9) Resulta cuestionable la alegación de que Tito se apropió del dinero, cuando éste no puede defenderse por haber fallecido.

D.P.R. 713 (1958). Más aún, retuvo dinero del menor en concepto de honorarios, sin seguir los procedimientos legales de autorización.

## IV

■ Respecto a la *segunda querella*, el Canon 18 del Código de Ética Profesional, *supra*, dispone que es impropio asumir una representación profesional consciente de no poder rendir una labor idónea y efectiva. Exige defender los intereses del cliente adecuada y responsablemente.

■ La conducta exhibida por el licenciado Pereira Esteves constituye violaciones graves y serias a los cánones de ética. Consciente de su inhabilidad para llevar casos y representar adecuadamente a sus clientes, el licenciado Pereira Esteves continuó ejerciendo la profesión y contratando nuevos clientes.[10] Más grave aún, ante la imposibilidad de formar sus escritos para lograr presentar una demanda, falsificó el nombre y firma de un compañero abogado, defraudando su confianza y la del tribunal. Su antieticidad es evidente y no requiere mucha elaboración. El Canon 35 del Código de Ética Profesional, *supra*, establece, en lo pertinente, que "[l]a conducta de cualquier miembro de la profesión legal ... en las relaciones con sus compañeros debe ser sincera y honrada" y que "[e]l abogado debe ajustarse a la sinceridad de los hechos ... al redactar afidávit u otros documentos". Íd. Véase *In re Laboy*, 113 D.P.R. 476 (1982).

---

[10] Estamos conscientes de que entre el 28 de diciembre de 1995 y el 9 de febrero de 1996, hubo incertidumbre si el licenciado Pereira Esteves había sido reinstalado a la profesión. No obstante, antes de ejercer cualquier actividad como abogado tenía la obligación de cerciorarse que podía obrar como tal.

Aunque no es objeto ni lo adjudicamos en el presente proceso disciplinario, antes de estas fechas, cualquier gestión realizada como abogado o notario, aunque fuera asistido en la firma por otro abogado, violó nuestra orden que lo suspendía de la profesión por dos (2) años.

De igual forma, merece nuestra censura la conducta del licenciado López Toro, de prestarse para dicha situación y de sugerir tales actuaciones al licenciado Pereira Esteves, en abierto desafío a nuestro dictamen disciplinario.

Como agravante a su ya errada conducta, el licenciado Pereira Esteves redactó y envió, con contenido falso, misivas dirigidas al Procurador General, buscando "esclarecer" los hechos originarios de esta querella.

■ Ineludible concluir que el licenciado Pereira Esteves violó las más sanas normas éticas, afectando no sólo los escrupulosos procedimientos judiciales, sino el respeto y la estima de la profesión ante la imagen pública. *In re Félix*, supra. En su vida privada como en el desempeño de su función, el abogado debe conducirse en forma digna y honorable, aun cuando conlleve sacrificios personales.

La justicia debe ser inmaculada no sólo en su realidad interior sino también en su apariencia externa. *In re Roldán Figueroa*, supra; *In re Rodríguez Torres*, 104 D.P.R. 758 (1976).

*Se dictará sentencia para decretar la suspensión indefinida del licenciado Pereira Esteves del ejercicio de la profesión de abogado.*

La Juez Asociada Señora Naveira de Rodón concurrió con el resultado sin opinión escrita.

