En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| IN RE:<br><br>PEDRO J. PEREIRA ESTEVES<br><br><br>V. | CONDUCTA<br>PROFESIONAL<br><br>98TSPR160 |

Número del Caso: CP-96-8  CONS. AB-96-105

Abogados de la Parte Querellante: HON. CARLOS LUGO FIOL
PROCURADOR GENERAL

LIC. IVONNE CASANOVA PELOSI
PROCURADORA GENERAL AUXILIAR

Abogados de la Parte Querellado: LIC. DEMETRIO FERNANDEZ

Abogados de la Parte Interventora:

Tribunal de Instancia:

Juez del Tribunal de Primera Instancia:

Tribunal de circuito de Apelaciones:

Juez Ponente:

Fecha: 11/30/1998

Materia:

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Pedro J. Pereira Esteves                CP-96-8
                                   Cons. AB-96-105

Opinión del Tribunal emitida por el Juez Asociado señor Negrón García

San Juan, Puerto Rico, a 30 de noviembre de 1998

I

El 12 de julio de 1996, el Procurador General formuló querella contra el Lcdo. Pedro J. Pereira Esteves –admitido a la abogacía y notaría el 3 y 29 de enero de 1974, respectivamente–, imputándole violación a los Cánones 23, 35 y 38 del Código de Ética Profesional. El 6 de junio de 1997, tras varios incidentes procesales[1] y previa autorización, el Procurador General enmendó la querella. Añadió,

---

[1] El 21 de junio ordenamos radicar la correspondiente querella. El 18 de septiembre el Lcdo. Pereira Esteves contestó. El 20, nombramos Comisionado Especial al Hon. Flavio E. Cumpiano Villamor, ex-Juez Superior.

como cuarto cargo, violar las disposiciones del Criterio General que regula los deberes del abogado para con los tribunales y su compromiso con la buena marcha del proceso judicial. Como resultado se le imputó una nueva y distinta querella sobre infracciones a los Cánones 18, 35 y 38.[2]

Luego del trámite usual y vista evidenciaria, el Comisionado Especial rindió su Informe. A base del mismo, los siguientes hechos quedaron probados.

## II

**A. Querella CP-96-8** (AB-95-74)

En 1979, Dulce M. Merced González contrató al Lcdo. Pereira Esteves para un caso de expropiación de una propiedad perteneciente a Doña Adela González Vda. de Merced y la sucesión de Don José Isabel Merced, compuesta por la viuda Adela González y seis (6) hijos; Dulce M., José F. (Tito), Carlos M. y Marta B., todos de apellidos Merced González, Gabriel A. Merced Arroyo y José A. Merced Zabala, éstos dos últimos, nacidos fuera del matrimonio en 1956 y 1964, respectivamente. Al asumir la representación, el Lcdo. Pereira Esteves no conocía a Carlos M., Gabriel A. ni a José A. **Tampoco sabía que éste último era menor de edad.** Se comunicaba sólo con Tito, a quién consideraba "representante de la sucesión".

Tras haber sido debidamente emplazados por el Estado, el Lcdo. Pereira Esteves compareció al Tribunal e indicó que deseaba retirar, bajo protesta, los fondos consignados. El

---

[2] El 30 de mayo de 1997, ordenamos consolidarla con la

tribunal requirió copia de la declaratoria de herederos y relevo de contribuciones sobre herencia.[3]

Así las cosas, el 1$^{ro}$ de abril de 1980, el Tribunal Superior autorizó expedir siete (7) cheques; uno por $15,544.30 a favor de la viuda Adela González, y otros seis (6) a favor de los seis (6) hijos del causante, cada uno por $2,580.71. Ordenó su entrega por conducto del Lcdo. Pereira Esteves, quien los entregó a Tito. Éste los distribuyó a sus destinatarios, excepto los de Gabriel Antonio Merced Arroyo y José Alberto Merced Zabala, los cuales devolvió al Lcdo. Pereira Esteves. Tito se comunicó con Gabriel Antonio y Doña Carmen Julia Zabala —madre de José Alberto Merced Zabala, de quince años y medio para esa fecha— y les indicó que fueran a la oficina del Lcdo. Pereira Esteves a buscar el dinero que les correspondía producto de la expropiación.

Gabriel Antonio acudió a la oficina, endosó el cheque y lo entregó al Lcdo. Pereira Esteves. Éste lo cambió y entregó $2,000.00 a Gabriel Antonio, **reteniendo $590.71.** Por su parte, Doña Carmen Julia también fue a recoger el cheque, y **por instrucciones del Lcdo. Pereira Esteves, lo endosó con el nombre de su hijo.** El Lcdo. Pereira Esteves salió de la oficina con el cheque, lo endosó y cambio en efectivo. Entregó $2,000.00 a Doña Carmen y **retuvo los restantes $590.71.**

---

original.

[3] El Lcdo. Pereira Esteves gestionó y obtuvo dichos documentos a través de Tito. **De la declaratoria de herederos surge que para la fecha de su expedición, José Alberto Merced Zabala tenía seis (6) años de edad.**

Tras cierta inactividad, y luego de varios apercibimientos, se celebró una conferencia con antelación al juicio en el caso de Expropiación, **en la cual el Lcdo. Pereira Esteves y el Estado transaron una compensación adicional de $9,787.71.**[4] Consecuentemente, el Tribunal remitió al Lcdo. Pereira Esteves siete (7) cheques; uno por $4,934.16 a favor de la viuda Adela González y otros seis (6) por $822.36 para cada uno de los hijos del causante. **Tito fue el único miembro de la sucesión enterado de estos acuerdos así como de la compensación adicional concedida. El Lcdo. Pereira Esteves nunca se lo comunicó a los demás.**

Para esa fecha, el Lcdo. Pereira Esteves compartía oficina –sin ser socios– con el Lcdo. Josué E. Maldonado Casillas, a quien pidió le ayudara a cambiar los cheques. Alegó tener la autorización de sus clientes para endosarlos y cambiarlos. Ambos habían hecho este tipo de operación previamente, debido a las relaciones comerciales del Lcdo. Maldonado Casillas con una institución bancaria. Acudieron al Banco y el Lcdo. Pereira Esteves le entregó los cheques al Lcdo. Maldonado Casillas,[5] quien los endosó con el nombre de las personas a quien se emitían, firmó con su nombre y anotó debajo, el número de su cuenta.

Los cheques no se depositaron en la cuenta del Lcdo. Maldonado Casillas, sino que se cambiaron en efectivo, con

---

[4] Suscribieron el acuerdo **el 4 de octubre de 1983.**

[5] Estaban emitidos por la Secretaria de la Sala de Expropiaciones contra su cuenta ubicada en el mismo banco en que el Lcdo. Maldonado Casillas tenía su cuenta.

el cual el Lcdo. Pereira Esteves adquirió cheques de gerente por determinadas cantidades a favor de cada uno de los miembros de la sucesión[6]. Retuvo una parte por concepto de honorarios.

El Lcdo. Pereira Esteves entregó los cheques de gerente a Tito así como la Sentencia emitida el 16 de noviembre de 1983 por la Sala de Expropiaciones. **Se desconoce el destino final de dichos cheques, aunque si se sabe, que ni Doña Adela González Vda. de Mercedes ni ningún otro heredero –excepto Tito– recibió el dinero.** Años después, Tito murió y su hermana Dulce María, encontró copia de la Sentencia que adjudicaba la compensación adicional por la expropiación. Al inquirir en la Agencia Expropiante y el Tribunal, vieron por vez primera los cheques emitidos a su favor, endosados con firma distinta a la de ellos.

**B. Querella AB-96-105**

El 22 de agosto de 1984, se formuló querella por conducta antiética contra el Lcdo. Pereira Esteves,

---

[6] Proveyó toda la información para la emisión de los cheques de gerente y fue él quien los recibió, además del efectivo. Aunque el Lcdo. **Maldonado Casillas no recibió dinero alguno por participar,** es censurable el haber endosado los referidos cheques.

**representado por el Lcdo. Barney López Toro.** Desde entonces, el Lcdo. Pereira Esteves compartía y participaba en algunos casos con los Lcdos. López Toro y Acosta Grubb. El 4 de septiembre de 1992 **suspendimos al Lcdo. Pereira Esteves por dos (2) años del ejercicio de la abogacía y notaría.** Poco después, se desligó de la oficina del Lcdo. López Toro, aunque la visitaba esporádicamente para realizar algunos trabajos, entre ellos; negociar asuntos de un cliente suyo, preparar y redactar proyectos de contratos y escrituras, **así como escrituras finales, las cuales otorgaba como notario el Lcdo. López Toro, debido a la suspensión del Lcdo. Pereira Esteves.**

Para agosto de 1994, poco antes de vencer el período de suspensión, el Lcdo. Pereira Esteves trasladó residencia al Barrio Jagueyes de Aguas Buenas, donde habilitó su oficina. El 5 de septiembre, **sin que lo hubiéramos reinstalado, comenzó a ejercer nuevamente la profesión.**[7] Sin embargo, por no haberse verificado su reinstalación mediante documento fehaciente, los funcionarios de los tribunales tenían órdenes de rechazar sus documentos.

Así las cosas, a mediados de febrero de 1995, la Sra. Rosita Peluyera Maldonado **contrató los servicios del Lcdo. Pereira Esteves** en un caso de daños y perjuicios, por un incidente ocurrido el 6 de febrero de 1995, en que su hija de ocho (8) años sufrió quemaduras en distintas áreas del cuerpo mientras se encontraba en la Escuela Jagueyes Abajo

de Aguas Buenas. Dos semanas después, la Sra. Peluyera Maldonado le entregó los récords médicos de la niña. No volvieron a reunirse.[8]

En enero de 1996, días antes de que el Lcdo. López Toro otorgara una escritura de un cliente del Lcdo. Pereira Esteves, éste lo llamó y le habló del caso –próximo a prescribir– sin darle detalles. Le informó además, los problemas que enfrentaba en los tribunales para que aceptaran sus escritos. El Lcdo. López Toro le indicó que si tenía problemas y no le aceptaban la demanda con su firma, que usara su nombre –López Toro– y él lo firmaba y así, aparecía como abogado de récord hasta que el Lcdo. Pereira Esteves pudiese asumir la representación legal.

El Lcdo. Pereira Esteves redactó la demanda, puso su nombre y la firmó, haciendo constar su dirección postal y teléfono de Aguas Buenas. El 5 de febrero de 1996, un día antes de concluir el término prescriptivo de un año para radicar la demanda, un representante del Lcdo. Pereira

---

[7] El 20 de julio de 1994, nos solicitó su reinstalación y el 20 de octubre la denegamos por prematura.

[8] El 18 de julio de 1995, el Tribunal de Primera Instancia nos inquirió –mediante Resolución– si el Lcdo. Pereira Esteves estaba autorizado a ejercer la profesión, toda vez había comparecido en representación de un imputado. En respuesta, requerimos al Lcdo. Pereira Esteves se expresara. El 28 de diciembre archivamos el incidente.

El 25 de enero de 1996, mediante moción, el Lcdo. Pereira Esteves nos solicitó aclaráramos si dicho archivo significaba que podía retornar a la práctica. El 9 de febrero expresamos que en efecto, implícitamente le habíamos autorizado ejercer la profesión. No obstante, hasta esta fecha, subsistió la duda de si podía o no ejercer.

Esteves acudió a la Secretaría del Tribunal Superior de Caguas a radicarla. La secretaria de radicaciones, al cotejar y verificar que el Lcdo. Pereira Esteves aparecía aún suspendido, rechazó el documento. Esa misma mañana, el Lcdo. Pereira Esteves **sustituyó la última página con otra, conteniendo el nombre y número de colegiado del Lcdo. López Toro. Así modificada y firmada con el nombre del Lcdo. López Toro, logró radicarla, con el núm. 96-0028.** Ese mismo día se emitieron los emplazamientos, con el nombre del Lcdo. López Toro, pero la dirección del Lcdo. Pereira Esteves.

El Lcdo. Pereira Esteves no discutió los hechos ni méritos del caso con el Lcdo. López Toro, ni le informó del contenido de la demanda. Tampoco le anticipó o ratificó que, en efecto habría de presentar la demanda bajo su nombre ni le solicitó que la firmara después que su propio nombre y firma fueran rechazados. El Lcdo. López Toro desconocía que se había radicado una demanda en la que él aparecía como abogado del demandante, firmada, supuestamente por él.

Posteriormente, se diligenció el emplazamiento con copia de la demanda al Secretario de Justicia, siendo remitidos a la División de Litigios, dirigida entonces, por la Lcda. López Ortiz, hija del Lcdo. López Toro. Enterada de la Demanda firmada por su padre, **con oficina en Aguas Buenas**, llevó copia al Lcdo. López Toro. Descubrieron que la dirección y el número telefónico eran del Lcdo. Pereira Esteves. Ante tal situación, el Lcdo. López Toro compareció por escrito al Tribunal de Primera Instancia, Sala de

Caguas, y solicitó se eliminara su nombre como representante legal de la demandante, pues nunca compareció como tal. Por su parte, la Lcda. López Ortiz, solicitó al secretario auxiliar de litigios investigara las actuaciones del Lcdo. Pereira Esteves.

El 22 de agosto de 1996, el Procurador General le escribió a la Sra. Peluyera Maldonado indicándole que se había radicado demanda a su nombre en la cual aparece como abogado el Lcdo. Barney López Toro, quien negó serlo. Al recibir la carta, fue donde el Lcdo. Pereira Esteves, quien le manifestó que era un error y que él contestaría. El Lcdo. Pereira Esteves preparó una carta dirigida a la Sub-Procuradora General, consignando que "[e]n relación a la carta que me enviara yo ya hice una declaración la cual en su momento se la hará llegar. Muchas gracias." (I.C.E. pág. 25). **La dio a firmar** a la Sra. Peluyera Maldonado y la remitió a la Oficina del Procurador General. **Ese mismo día**, el Lcdo. Pereira Esteves **preparó otra carta en la que indicó que "[r]elacionado con la carta que me enviara debo indicarle que con mi permiso, consentimiento y conocimiento y también con el del abogado Barney H. López Toro, la demanda que dice fue preparada ya que caducaba el tiempo y perdía el derecho. Después el abogado Pedro J. Pereira se unía a la misma. No conozco al abogado López, pero a pedido de Pereira él lo aprobó y yo estuve de acuerdo."** (I.C.E. pág. 25). La dio a firmar a la Sra. Peluyera Maldonado.

La Sra. Peluyera Maldonado fue citada a prestar declaración jurada y no compareció. A petición del Procurador General, el 3 de diciembre de 1996, el tribunal le ordenó comparecer. En reacción, el Lcdo. Pereira Esteves escribió a la Oficina del Procurador General indicando que la citación era innecesaria pues le remitía **una declaración de ella. Acompañó la carta preparada por él y firmada por la Sra. Peluyera Maldonado.**

El 14 de febrero de 1997, la Sra. Peluyera Maldonado compareció ante el Procurador General y **bajo juramento testificó que no conocía ni conoce al Lcdo. López Toro, que contrató sólo al Lcdo. Pereira Esteves; no autorizó ni tenía conocimiento que el Lcdo. López Toro sería su abogado; que el Lcdo. Pereira Esteves no había vuelto a comunicarse con ella ni le ha aclarado lo relativo a su representación del caso, ni el estado del caso en instancia.**[9]

## III

El Criterio General regulador de los deberes del abogado para con los Tribunales, responsabiliza a todo miembro de la profesión legal por la buena marcha del proceso judicial del país, y en la consecución de ese fin, le requiere realizar todas las gestiones propias y legales que estén a su alcance.

Por su parte y, en lo pertinente, el Canon 23 establece que "[l]a naturaleza fiduciaria de las relaciones entre abogado y cliente exige que éstas estén fundadas en la

**honradez absoluta.** En particular, debe darse pronta cuenta del dinero u otros bienes del cliente que vengan a su posesión y **no debe mezclarlos con sus propios bienes ni permitir que se mezclen.**" 4 L.P.R.A: Ap. IX C.23. Es sancionable la retención de fondos de los clientes, aunque no haya habido la intención de apropiárselos y se devuelvan. In re Vázquez O´Neill, 121 D.P.R. 623 (1988). De igual forma, "constituye violación a este Canon, el que un abogado **disponga impropiamente de cualquier suma de dinero** perteneciente a su cliente." In re Ávila, Jr., 109 D.P.R. 440 (1980); In re Roldán Figueroa, 106 D.P.R. 4 (1977).

En In re Cardona Vázquez, 108 D.P.R. 6 (1978), desaforamos a un abogado que retiró de un tribunal un cheque de su cliente, **lo endosó fraudulentamente,** y luego depositó en su cuenta personal. Advertimos que la devolución del monto de dicho cheque al cliente no excusaba su conducta inmoral e ilegal. Reiteramos que es altamente reprochable –e ilegal– endosar un cheque, sin el conocimiento ni consentimiento de la persona a favor de quien se gira, falsificando su nombre. In re Maldonado Soto, 83 D.P.R. 444 (1961).

Aún en circunstancias en que un cliente acuerde pagar honorarios tan pronto reciba dinero en su caso, no se justifica que, para cobrarlos, el abogado sin su consentimiento, endose los cheques pertenecientes a éste, falsificando así su firma y cobrando sus honorarios. Esta

---

[9] En términos análogos prestó testimonio ante el

forma impropia e ilegal de actuar viola, sin lugar a dudas, las disposiciones del Canon 23. In re Fernández Paoli, res. en 6 de junio de 1996; In re Morales Soto, res. en 21 de enero de 1994; In re Vázquez O´Neill, supra; In re Félix, 111 D.P.R. 671 (1981); In re Maldonado Soto, supra.

La conducta  del Lcdo. Pereira Esteves –en la primera querella– demuestra un claro menosprecio de los principios dimanantes de las descritas normas éticas. Retuvo y dispuso impropiamente parte del dinero de sus clientes al cambiar los cheques, sin que éstos tuvieran oportunidad de conocer y consentir sobre la cantidad de dinero retenida por concepto de honorarios. Peor aún, en la segunda emisión de cheques, los endosó y cambió fraudulentamente, sin conocimiento y consentimiento de sus clientes.

Constituyó una crasa inobservancia de las normas éticas y legales el que descansara en uno de los miembros de la sucesión, alegando incorrectamente que era el representante. Conocía –debió conocer–, que la sucesión no es persona jurídica separada de sus componentes. Faltó así, su deber de informar a todos sus clientes –miembros de la sucesión– las incidencias y desarrollo del caso, propiciando que el dinero en efectivo, producto de la segunda emisión de cheques, no llegara a manos de sus legítimos dueños.[10] In re Morales Soto, supra; In re Acosta Grubb, 119 D.P.R. 595 (1987);

---

Comisionado Especial, Hon. Cumpiano Villamor.

[10] Resulta cuestionable la alegación de que Tito se apropió del dinero, cuando éste no puede defenderse por haber fallecido.

Colón Prieto v. Géigel, 115 D.P.R. 232 (1984); In re Pagán Ayala, 109 D.P.R. 712 (1980); In re Cardona Vázquez, supra.

En relación al menor, es evidente que luego de obtener y facilitarle al tribunal los documentos requerídoles para poder retirar los primeros cheques, el Lcdo. Pereira Esteves **advino en conocimiento de su minoridad.** Sin embargo, nuevamente faltó a su deber de informar, esta vez al tribunal, ese hecho. Contrario a la normativa sobre fondos judiciales pertenecientes a menores, el Lcdo. Pereira Esteves **llegó a un acuerdo transaccional con el Estado, sin que el Tribunal tuviera oportunidad de pasar juicio sobre los intereses del menor.** In re Guzmán, 80 D.P.R. 713 (1958). Más aún, retuvo dinero del menor en concepto de honorarios, sin seguir los procedimientos legales de autorización.

IV

Respecto a la **segunda querella**, el Canon 18 dispone que es impropio asumir una representación profesional consciente de no poder rendir una labor idónea y efectiva. Exige defender los intereses del cliente adecuada y responsablemente.

La conducta exhibida por el Lcdo. Pereira Esteves constituye violaciones graves y serias a los cánones de ética. Consciente de su inhabilidad para llevar casos y representar adecuadamente a sus clientes, el Lcdo. Pereira Esteves continuó ejerciendo la profesión y contratando

nuevos clientes.[11] Más grave aún, ante la imposibilidad de formar sus escritos para lograr radicar una demanda, falsificó el nombre y firma de un compañero abogado, defraudando su confianza y la del Tribunal. Su antieticidad es evidente y no requiere mucha elaboración. El Canon 35 establece, en lo pertinente, que "[l]a conducta de cualquier miembro de la profesión legal... en las relaciones con sus compañeros debe ser sincera y honrada" ...y que "[e]l abogado debe ajustarse a la sinceridad de los hechos... al redactar affidávits u otros documentos". Código de Ética Profesional, 4 L.P.R.A., Ap. IX, C. 35. In re Laboy Rodríguez, 113 D.P.R. 476 (1982).

Como agravante a su ya errada conducta, el Lcdo. Pereira Esteves, redactó y envió, con contenido falso, misivas dirigidas al Procurador General, buscando "esclarecer" los hechos originarios de esta querella.

Ineludible concluir que el Lcdo. Pereira Esteves violó las más sanas normas éticas, afectando no sólo los

---

[11] Estamos conscientes de que entre el 28 de diciembre de 1995 y el 9 de febrero de 1996, hubo incertidumbre si el Lcdo. Pereira Esteves había sido reinstalado a la profesión. No obstante, antes de ejercer cualquier actividad como abogado tenía la obligación de cerciorarse que podía obrar como tal.

Aunque no es objeto ni lo adjudicamos en el presente proceso disciplinario, antes de estas fechas, cualquier gestión realizada como abogado o notario, aunque fuera asistido en la firma por otro abogado, violentó nuestra orden suspendiéndolo de la profesión por dos (2) años.

De igual forma, merece nuestra censura la conducta del Lcdo. López Toro, de prestarse para dicha situación, sugerir actuaciones similares al Lcdo. Pereira Esteves, en abierto desafío a nuestro dictamen disciplinario.

escrupulosos procedimientos judiciales, sino el respeto y la estima de la profesión ante la imagen pública. In re Félix, supra. En su vida privada como en el desempeño de su función, el abogado debe conducirse en forma digna y honorable, aún cuando conlleve sacrificios personales.

La justicia debe ser inmaculada no sólo en su realidad interior sino también en su apariencia externa. In re Roldán Figueroa, supra; In re Rodríguez Torres, 104 D.P.R. 758 (1976).

Se dictará Sentencia decretando la suspensión indefinida del Lcdo. Pereira Esteves, del ejercicio de la profesión de abogado.


                         ANTONIO S. NEGRON GARCIA
                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:

Pedro J. Pereira Esteves              CP-96-8
                                 Cons. AB-96-105


SENTENCIA


San Juan, Puerto Rico, a 30 de noviembre de 1998


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente, se dicta Sentencia suspendiendo indefinidamente del ejercicio de la abogacía al Lcdo. Pedro J. Pereira Esteves.

Se ordena a la Oficina del Alguacil que proceda a incautarse de su obra notarial, incluyendo el sello notarial, para ser entregados a la Oficina de Inspección de Notarías.

Lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón concurre en el resultado sin opinión escrita.


                              Carmen E. Cruz Rivera
                              Subsecretaria del Tribunal Supremo