EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | Querella |
|---|---|
| In re: | 2001 TSPR 110 |
| Angel S. Bonilla Rodríguez | 154 DPR _____ |

Número del Caso: CP-2000-6

Fecha: 17/julio/2001

Oficina del Procurador General :
                              Lcda. Minnie H. Rodríguez López
                              Procuradora General Auxiliar

Abogado de la Parte Querellada:
                              Por Derecho Propio

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re:

Angel S. Bonilla Rodríguez          CP-2000-6

PER CURIAM

San Juan, Puerto Rico, a 17 de julio de 2001

El Licenciado Angel S. Bonilla Rodríguez representó a la Sra. Nereida Soto y a la Sra. Carmen Zulma Soto en una demanda de filiación, presentada el 22 de enero de 1990, contra el Sr. Justo López Echeandía ante el extinto Tribunal Superior de Puerto Rico, Sala de Utuado. Mediante sentencia de 15 de marzo de 1991, el referido tribunal determinó que la demandante Nereida Soto efectivamente era hija del demandado López Echeandía. El cuanto a la causa de acción de Carmen Zulma Soto, la misma fue desestimada por el tribunal debido a que, conforme ello surge de una

"minuta", ésta "nunca vino a los procedimientos y procedimientos y no tiene interés alguno en dicha demanda".[1]

En el entretanto, y durante este mismo período, el 19 de octubre de 1990, la Sra. Nereida Soto --ahora Nereida López Soto-- demandó en daños y perjuicios al Sr. López Echeandía. El Licenciado Bonilla Rodríguez figuró como abogado de la referida demandante en dicho pleito.[2]

Fallecido el señor Justo López Echeandía, el 20 de febrero de 1992, la Sra. Carmen Zulma Soto instó, nuevamente, una demanda de filiación ante el extinto Tribunal Superior de Puerto Rico, Sala de Aguadilla[3], --representada, igualmente por el Lcdo. Angel S. Bonilla Rodríguez-- contra los miembros de la sucesión del fallecido, solicitando la nulidad de la institución de herederos hecha en el testamento abierto otorgado por el finado mediante la escritura número 45 el 11 de julio de 1991. La Sra. Nereida López Soto figuraba como codemandada en dicha acción; ello en virtud de haber sido declarada hija del finado López Echeandía. Este pleito terminó con una sentencia favorable a la demandante Carmen Zulma Soto.[4]

Por otra parte, el 6 de marzo de 1992, el Lcdo. Bonilla Rodríguez, representando a la Sra. Lydia López Vera, al Sr. Francisco A. López Vera y a la Sra. Nereida López Soto, demandó a la sucesión de Providencia Vera Crespo y Justo López Echeandía, impugnando: los testamentos abiertos que otorgaron Providencia Vera Crespo y Justo López Echeandía, respectivamente; el nombramiento de los albaceas testamentarios en ambos testamentos; el rendimiento de cuentas del caudal hereditario a partir del fallecimiento de la Sra. Providencia Vera Crespo; y la correspondiente partición de herencia[5]. En dicha demanda, el Lcdo. Bonilla hizo constar que, entre los herederos de la sucesión del Sr. López Echeandía, figuraba la Sra. Carmen Zulma Soto quien "sostiene una acción de filiación ante ese Tribunal." Cabe recalcar que es el mismo Lcdo. Bonilla quien ostentaba la representación legal de la Sra. Carmen Zulma Soto en la acción de filiación.

---

[1] Minuta de fecha 25 de febrero de 1991.
[2] No surge del expediente el resultado de dicho pleito.
[3] Civil Núm. TS-92-340.
[4] No surge de los autos la fecha exacta de esta sentencia.
[5] Civil Núm. TS-92-401.

Así las cosas, el 26 de agosto de 1993, uno de los herederos, el Sr. Wilson López, presentó una queja ante este Tribunal en el cual cuestionó la actuación del Lcdo. Bonilla Rodríguez al representar a la Sra. Nereida López Soto en el caso de filiación en contra del Sr. López Echeandía y, luego, al éste fallecer, representar a la Sra. Carmen Zulma Soto en otra demanda de filiación contra la sucesión de aquél, entre cuyos demandados incluyó a Nereida López Soto, a quien había representado en su caso de filiación.

El 5 de noviembre de 1993 este Tribunal dictó Resolución ordenándole al Lcdo. Bonilla que renunciara a la representación profesional que ostentaba en los casos TS-92-340 y TS-92-401[6] presentados en el Tribunal Superior de Aguadilla.[7] El Licenciado Bonilla cumplió con lo ordenado.

El 2 de noviembre de 1996, el Lcdo. Bonilla Rodríguez presentó una petición de intervención en un caso, sobre nombramiento de contador partidor, instada por Wilson López Vera, et als v. Justo A. López Vera, Francisco A. López Vera, Erohilda López Mártir, Nereida López Soto y Carmen Zulma López Soto (Caso Civil Núm. LAC96-0104), reclamando el pago de honorarios de abogados. El tribunal de instancia denegó la intervención solicitada y la moción de reconsideración presentada en el mismo asunto.

Ante la negativa a su solicitud de intervención, el 17 de julio de 1997, el Lcdo. Bonilla radicó demanda, por violación de contrato y en cobro de dinero, contra Justo López Vera, Francisco A. López Vera, su esposa Hilda Santiago y la sociedad de gananciales por ellos compuesta, Lydia López Vera, su esposo Dorian Ramírez, Erohilda López Mártir, Nereida López Soto y Carmen Zulma López. Desistió de dicha acción posteriormente.

No obstante lo anterior y luego de unos trámites procesales, el licenciado Bonilla Rodríguez presentó en dicho caso una moción para que se

---

[6] Las acciones involucran a los herederos de las sucesiones de Providencia Vera Crespo, compuesta por sus hijos: Cecilia Esther, Nilda Rosa, Minerva, Justo Apolinar, Edith, Franklin, Wilson, Nelson, Ferdinand, Lydia y Francisco, todos de apellido López Vera. Por otro lado, se encuentra la sucesión de Justo López Echeandía compuesta por todos los herederos de Providencia Vera Crespo, además de Carmen Zulma López Soto, Nereida López Soto y Erohilda López Mártir.

le permitiera asumir la representación legal de las codemandadas Nereida López Soto y Carmen Zulma López Soto. El 5 de junio de 1998, el Tribunal Superior, Sala de Utuado, aceptó al licenciado Bonilla Rodríguez como representante legal de Carmen Zulma López Soto y Nereida López Soto en el caso LAC-96-0104. Es decir, el licenciado Bonilla asumió representación legal en el mismo caso en que éste había solicitado intervención anteriormente, reclamando honorarios, y sobre el mismo asunto que lo llevó a demandar por violación de contrato y cobro de dinero contra, entre otros, las partes que ahora solicitó representar.

El 8 de junio de 1998, la representación legal de la parte demandante en el caso LAC-96-0104 solicitó del tribunal de instancia la descalificación del Licenciado Bonilla Rodríguez en dicho caso. Mediante resolución de 28 de octubre de 1998 y notificada el 9 de noviembre de 1998, el tribunal de instancia, en lo aquí pertinente, determinó que no procedía la descalificación solicitada. Los demandantes, entonces, recurrieron al Tribunal de Circuito de Apelaciones, Circuito Regional III, Arecibo-Utuado, vía certiorari interlocutorio. Mediante sentencia del 17 de marzo de 1999, el tribunal apelativo revocó la decisión de instancia y determinó que procedía la descalificación del licenciado Bonilla Rodríguez en el caso LAC-96-0104. Sostuvo que los hechos relatados perfilaron una situación de conflicto de intereses.

Dado los hechos esbozados, el Procurador General formuló una querella contra el licenciado Angel S. Bonilla Rodríguez, por violación al Canon 21 de Etica Profesional, por éste "ostentar la representación legal de clientes con intereses encontrados e incompatibles entre sí" y por violación al Canon 38 de Etica Profesional al "representar los intereses de clientes que fluctuaban como demandantes y demandados en los que intervino creando una apariencia de conducta profesional impropia."

El licenciado Bonilla Rodríguez contestó la querella negando los cargos. Designamos como Comisionado Especial al Ex Juez Superior Elí Arroyo

---

[7] El caso TS-92-401 fue trasladado al Tribunal Superior, Sala de Utuado, con el número LAC-92-0043.

para que nos rindiera un informe con sus determinaciones de hechos y recomendaciones.

Examinado el expediente, y las recomendaciones del Comisionado, procedemos a resolver.

## I

El Canon 21 de Etica Profesional, ante, en lo pertinente, dispone:

> "El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional puede ser afectado por sus intereses personales.
>
> No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.
>
> La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que pueden afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueben. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste." Canon 21 de Etica Profesional, 4 L.P.R.A. Ap IX C.21, (Énfasis suplido.)

En In re: Toro Cubergé, 140 D.P.R. 523, 529-539 (1996) señalamos que el citado Canon 21 contempla tres situaciones que debe evitar todo abogado para no incurrir en la representación de intereses encontrados, a saber: (1) que, en beneficio de un cliente, se abogue por aquello a lo que el letrado debe oponerse, en cumplimiento de sus obligaciones para con otro cliente, situación que presupone la representación simultánea de dos clientes distintos, cuyos intereses se llegan a oponer; (2) que un abogado acepte la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de un cliente anterior, la cual presupone la representación sucesiva de distintos clientes, cuyos intereses se llegan a oponer; (3) que un abogado acepte una representación legal, o que continúe

en ella, cuando su juicio profesional pueda ser afectado por sus intereses personales.

Como podemos notar, el Canon 21, ante, abarca el conflicto de intereses por la representación múltiple y la representación sucesiva de clientes. "La representación sucesiva de clientes con intereses adversos presenta el peligro especial de que el abogado viole el principio de la confidencialidad", In re: Carreras Rovira y Suárez, ante, 790, privilegio que subsiste aun luego de finalizada dicha representación. In re: Guzmán, 80 D.P.R. 713, 724 (1958).

Para determinar si existe un conflicto por representación sucesiva, solo se tiene que demostrar una "relación sustancial" o adversa entre la controversia legal en la que el abogado comparece actualmente en su contra y la materia o causa de acción en la que dicho abogado representó inicialmente. In re: Carreras Rovira y Suárez, ante, 791. No obstante, el criterio de "relación sustancial" no requiere probar una violación actual al principio de confidencialidad por lo que cobija cualquier violación potencial dentro del marco de dicha relación. Id. Es decir, basta probar que la controversia en el pleito actual está relacionada sustancialmente con la materia o causa de acción anterior. Otaño Cuevas v. Vélez Santiago, ante, 280.

El objetivo de dicha doctrina pretende salvaguardar y asegurar que los secretos y confidencias que el cliente anterior compartió en el transcurso de su relación con su representante legal no se utilicen posteriormente en su contra. En In re: Orlando Roura, 119 D.P.R. 1, 6 (1987), atinamos que existe un conflicto de intereses impermisible cuando un abogado, que representó a ambas partes en un pleito de divorcio por consentimiento mutuo, luego interviene o participa "en esa condición en cualquier litigio posterior relacionado, directa o indirectamente, con las cuestiones objeto de dicho divorcio por consentimiento." (Énfasis suplido); véase, además, In re: Peña Clos, 135 D.P.R. 590 (1994).

Luego, extendimos la protección brindada en la doctrina de la representación sucesiva de clientes para evitar violaciones al Canon 21 de Etica Profesional, ante, al descalificar, no solo al abogado que representó

a la parte en el pleito, sino que, en ciertas circunstancias, permite descalificar al grupo de abogados o bufete que les ofreció el servicio si uno o más de sus integrantes está personalmente descalificado (descalificación primaria) a causa de un conflicto de interés a través de la descalificación imputada o vicaria. P.R. Fuels, Inc. v. Empire Gas Co., Inc., 133 D.P.R. 112 (1993); véase, además, Robles Sanabria, *Ex Parte*, 133 D.P.R. 739 (1993).

Así, la doctrina faculta que unos o todos los abogados del bufete o agrupación se descalifiquen por existir una presunción de confidencias compartidas. Además, autoriza la descalificación primaria de un bufete o agrupación de abogados por la posibilidad de éstos sostener un interés económico adverso al del cliente, lo cual implica una bifurcación en la lealtad absoluta que deberá ejercer todo abogado para con su cliente[8]. Robles Sanabria, *Ex parte*, ante. La protección de los intereses y confidencias del cliente anterior pretende asegurar al cliente la completa lealtad de sus abogados y la de aquellos con quienes estén afiliados e impera sobre cualquier otro interés presente o ulterior en competencia. *Id*.

Señalamos en In re: Belén Trujillo, 126 D.P.R. 743, 754 (1990) que el conflicto de intereses proscrito por el Canon 21 comprende tanto el conflicto de intereses personales como el conflicto de obligaciones. La primera vertiente sostiene que el conflicto existe cuando los intereses personales del abogado interfieren con la representación adecuada y efectiva del cliente al ser éstos incompatibles entre sí, dificultando, así, el deber de lealtad hacia su cliente. En su segunda acepción, el conflicto de obligaciones existe cuando las representaciones simultáneas o sucesivas están en conflicto con su deber de guardar confidencias que ostenta el abogado con los intereses de cada uno de sus clientes. *Id*.

Como regla general, los abogados no solo deben evitar el conflicto de intereses actual, sino también el potencial. Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 190 (1985). Así, "para imponer al abogado la

_____

[8] Esta presunción de confidencias compartidas aplica a aquellas agrupaciones o bufetes cuya política se distingue por el acceso

obligación de renunciar a la representación del cliente afectado, el conflicto no tiene que estar establecido claramente; basta con que el conflicto sea potencial. La situación no varía por el hecho de que alguien crea que dicha posibilidad es, o no, 'altamente especulativa'". Fed. Pesc. Playa Picúas v. U.S. Inds. Inc., 135 D.P.R. 303, 319 (1994). Por lo tanto, es éticamente insostenible que un abogado ostente la representación simultánea o sucesiva de partes con potencial conflicto de intereses o con intereses encontrados.

Así, el Canon 21 de Etica Profesional, ante, impone un deber de lealtad absoluta al ejercer un juicio independiente y desligado a sus intereses personales y al no divulgar los secretos y confidencias que el cliente le haya manifestado durante su relación en representaciones anteriores, presentes y en las subsiguientes. Liquilux Gas Corp. v. Berríos, Zaragoza, 138 D.P.R. 850, 857-858 (1995); Robles Sanabria, *Ex Parte*, ante.

Todo abogado deberá cerciorarse de que no representa intereses encontrados o incompatibles entre sí. In re: Robert Palau Bosch, res. el 30 de junio de 1999, 1999 T.S.P.R. 122. En In re: Concepción Suárez, 111 D.P.R. 486 (1981), requerimos la renuncia de un abogado por existir una posibilidad de conflicto de intereses ya que el abogado representaba a la esposa de su antiguo amigo y cliente en un pleito de divorcio. Es decir, el conflicto de intereses dimanante de una representación múltiple o sucesiva de clientes cobija tanto las estrechas relaciones profesionales como las de amistad. *Id.*, 490. Igualmente sancionamos a un abogado por violar el Canon 21, ante, al representar los bienes de un cliente mientras dicho abogado era presidente y dueño de casi la totalidad de acciones de la compañía financiera, con un interés económico en dichos bienes. In re: Martínez Rivera, 106 D.P.R. 239 (1977).[9] El abogado "debe cuidarse de que sus actuaciones no den margen a la más leve sospecha de que defiende intereses encontrados con los de su cliente. En ese caso, es su deber desligarse cuanto

_____

libre de información o que fomenta que los abogados compartan información entre sí.
[9] Sancionamos a los abogados querellados que representaban y asesoraban a la Asamblea Municipal mientras representaban a

antes de la representación profesional que ostenta." In re: Roldán González, ante.

II

Por otra parte, el Canon 38 de Etica Profesional, ante, impone a todo abogado el deber ineludible de "esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales, y debe evitar hasta la apariencia de conducta profesional impropia". (Énfasis suplido).

Es obligación de todo abogado evitar toda apariencia de impropiedad; esto es, en caso de duda sobre la posibilidad de un conflicto de intereses, el abogado deberá renunciar a la representación legal del cliente afectado o potencialmente afectado. In re: Toro Cubergé, ante, 533; In re: Valentín González, 115 D.P.R. 68 (1984); In re: Carreras Rovira y Suárez Zayas, ante; Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172 (1985); In re: Belén Trujillo, ante; Fed. Pesc. Playa Picúas v. U.S. Inds., Inc., ante; In re: Peña Clos, ante.

Es menester que "el abogado sea escrupuloso en el cumplimiento de las normas de ética profesional, y debe cuidarse de que sus actuaciones no den margen a la más leve sospecha de impropiedad". In re: Toro Cubergé, ante, 535; In re: Roldán González, ante; In re: Rojas Lugo, 114 D.P.R. 687 (1983). Es por ello que a todo abogado le ampara la obligación de precaver el conflicto de intereses, tanto en la realidad como en la apariencia. In re: Pizarro Santiago, 117 D.P.R. 197 (1986). Por ende, "la apariencia de impropiedad será utilizado para resolver cualesquiera dudas que surjan sobre posible conflicto de intereses, a favor de la descalificación". Meléndez Vega v. Caribbean Intl. News, res. el 29 de junio de 2000, 2000 T.S.P.R. 101; véase además Liquilux Gas Corp. v. Berríos, ante, Otaño Cuevas v. Vélez Santiago, ante.

---

ciudadanos en pleitos contra el Municipio. In re: Roldán González, 113 D.P.R. 238 (1982).

**III**

A tenor con la normativa expuesta, no cabe duda que en el caso de marras, el Lcdo. Bonilla incurrió en un conflicto insostenible de intereses, violatorio el mismo de las disposiciones de los Cánones 21 y 38 de Etica Profesional. El querellado ostentó la representación sucesiva de partes adversas en asuntos relacionados entre sí, situación que infringe el deber de lealtad y confianza absoluta que deberá existir en una relación abogado-cliente.

Debe señalarse que no obstante este Tribunal haber ordenado la renuncia del Lcdo. Angel Bonilla en el caso de Filiación, Nulidad de Testamento y Petición de Herencia, en el cual representaba a Carmen Zulma Soto, contra la sucesión de Justo López Echeandía, y en el caso de Impugnación de Testamento, Rendimiento de Cuentas, Partición de Herencia e Impugnación de Albacea testamentario, en el cual representaba a Lydia López Vera, Francisco López Vera y Nereida López Soto, contra la sucesión de Providencia Vera Crespo, éste intentó asumir la representación legal de las codemandadas Nereida López Soto y Carmen Zulma López en dicho caso.

Aun cuando los procedimientos de descalificación no constituyen acciones disciplinarias, sino que se emplean como una medida preventiva para evitar posibles violaciones a los Cánones de Etica, K-Mart Corp. v. Walgreens of P.R., Inc., 121 D.P.R. 633 (1988), y que las codemandadas dieron su anuencia libre y voluntaria a que el Lcdo. Bonilla las representara, luego de los hechos acontecidos y la demanda que éste radicó contra ellas, no podemos permitir el menoscabo al cumplimiento riguroso de los cánones de ética y nuestros propios pronunciamientos en In re: Félix, 111 D.P.R. 671 (1981), a saber: "Condonar la conducta del abogado bajo la tesis de que su cliente le mantiene confianza es simplemente renunciar y entregar la jurisdicción disciplinaria de este foro a criterios individuales, sabios o no, sacrificando intereses públicos de alta calidad." Id., 674. Véase, además, In re: Concepción Suárez, ante, 491.

La conducta del licenciado Bonilla Rodríguez está reñida con las disposiciones de los Cánones 21 y 38 de Etica Profesional. Como hemos señalado consistente y continuamente, la consecución del desempeño de la

abogacía requiere en todo momento celo, cuidado y prudencia, por lo que no admite suspicacia ni ambigüedad en su función profesional. In re: Carreras Rovira y Suárez Zayas, ante, 784; In re: Rodríguez Torres, 104 D.P.R. 758, 765 (1976). La lealtad, fidelidad y diligencia que debe ejercer la clase togada con un cliente abriga todo asunto relacionado con su representación legal y/o cualquier asunto que el cliente consulte. Dicha lealtad es "indivisible y continúa aun después de cesar entre ellos las relaciones de abogado y cliente". In re: Carreras Rovira y Suárez Zayas, ante, 784 (1984); In re: Guzmán, 80 D.P.R. 713, 723 (1958).

No podemos pasar por alto los postulados que emanan de los Cánones de Etica Profesional, pues se debilita y amedrenta la confianza depositada en la profesión legal. Dicha confianza, acompañada con la lealtad con que el abogado desempeña su labor, encauza la relación abogado- cliente, piedra angular en la administración adecuada y  eficaz de la representación legal y la justicia. La gestión legal no admite oscilación ni ambigüedad por lo que "las dudas sobre cuestiones de ética profesional debe resolverlas el abogado con rigurosidad contra sí mismo". In re: Valentín, 115 D.P.R. 68, 73 (1984); In re: Toro Cubergé, ante, 535; In re: Carreras Rovira y Suárez Zayas, ante. Es por ello que hemos enfatizado que las violaciones al Canon 21, ante, conllevan la imposición de sanciones al abogado. In re: Peña Clos, ante, 602.

IV

En mérito de lo antes expuesto, procede censurar severamente al Lcdo. Angel S. Bonilla Rodríguez. Apercibimos al licenciado Bonilla Rodríguez para que, en el futuro, ejerza mayor cautela al evaluar las situaciones que pudieran generar un conflicto de intereses o, en la alternativa, que pudieran desatar una apariencia de impropiedad. Además, apercibimos al licenciado Bonilla Rodríguez de que en el futuro procure el cabal cumplimiento a los Cánones de Etica que rigen la profesión togada.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re:

Angel S. Bonilla Rodríguez        CP-2000-6

SENTENCIA

San Juan, Puerto Rico, a 17 de julio de 2001

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia censurando severamente al Lcdo. Angel S. Bonilla Rodríguez.

Se apercibe al licenciado Bonilla Rodríguez para que, en el futuro, ejerza mayor cautela al evaluar las situaciones que pudieran generar un conflicto de intereses o, en la alternativa, que pudieran desatar una apariencia de impropiedad. Además, apercibimos al licenciado Bonilla Rodríguez de que en el futuro procure el cabal cumplimiento a los Cánones de Etica que rigen la profesión togada.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón concurre en el resultado sin opinión escrita. El Juez Asociado señor Rivera Pérez no interviene.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo