Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VII

| | | |
|---|---|---|
| **SUCN. ALCÍDES RÍOS JORDÁN**<br><br>RECURRIDA<br><br>V.<br><br>**JAVIER RÍOS JORDÁN Y OTROS**<br><br>PETICIONARIA<br><br>**YEIDEE RÍOS MALDONADO**<br><br>TERCERA DEMANDADA-RECURRIDA<br><br>**ANTONIA JORDÁN MALDONADO**<br><br>DEMANDANTE-INTERVENTORA | KLCE202400741 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Utuado<br><br>Caso Núm.<br>L CD2015-0052 (5)<br><br>Sobre:<br>COBRO DE DINERO |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 26 de agosto de 2024.

Comparece ante nos, Javier Ríos Jordán, Luz Yanira Díaz Sepúlveda y la Sociedad Legal de Gananciales compuesta por estos, en conjunto los peticionarios, y solicitan que revisemos una *Resolución*[1] emitida el 7 de junio de 2024 por el Tribunal de Primera Instancia, Sala Superior de Utuado, en adelante TPI. Mediante dicho dictamen se declaró "No Ha Lugar" la moción urgente de reconsideración reclamando el derecho a una notificación adecuada de una demanda enmendada y solicitando descalificación de representante legal por conflicto de intereses.

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari* y se modifica la Resolución recurrida.

Los hechos que anteceden a la controversia que atendemos son los siguientes.

---

[1] Recurso de Certiorari, Anejo 1, pág. 1.

**-I-**

El 15 de agosto de 2023, el TPI ordenó, a solicitud de los peticionarios, que se sustituyera a Alcides Ríos Jordán, en adelante demandante fallecido o causante, conforme a lo establecido en la Regla 22.1 de Procedimiento Civil.[2] Así las cosas, el 10 de enero de 2024, la sucesión del causante, en adelante los recurridos, presentaron *Moción en Cumplimiento de Orden 'Demanda Enmendada' Conforme a la Sustitución de Parte,* en la que acumularon a Yeidee Ríos Maldonado, en adelante señora Ríos Maldonado o tercera demandada, como parte demandante en sustitución e incluyeron unos anejos que no fueron notificados a la parte contraria. Debido a la falta de notificación sobre los anejos y el incumplimiento con el proceso para enmendar la demanda, el tribunal ordenó presentar la demanda enmendada nuevamente con los anejos.[3]

Posteriormente, y fuera del término concedido por el TPI, el 8 de mayo de 2024, los recurridos presentaron un escrito que titularon *En Cumplimiento de Orden: "Sustitución de parte y Demanda Enmendada"* en el que volvieron a acumular a la tercera demandada como parte demandante sin incluir los anejos.[4] Dicha demanda enmendada fue acogida por el TPI y no requirió de los demandados una contestación.

Así las cosas, los peticionarios presentaron *Urgente Moción de Reconsideración, de Descalificación y Otros Extremos*[5]*,* donde arguyeron que la sustitución efectuada constituye una "aberración jurídica" conforme a lo resuelto en el caso *Vilanova Díaz v. Vilanova Serrano*[6]*,* por tratarse de una parte sustituyendo y acumulándose simultáneamente como parte demandante y como parte demandada. Entiende que se ha creado un conflicto de interés "insalvable" y prohibido por los cánones del Código de Ética Profesional[7] por parte de la representación legal de la tercera

---

[2] Regla 22.1 de Procedimiento Civil de 2009 (32 LPRA Ap. V).
[3] *Id.*, Anejo 9, págs. 85-87.
[4] *Id.*, Anejo 7, págs. 52-63.
[5] *Id.*, Anejo 2, págs. 2-22.
[6]  *Vilanova et al. v. Vilanova et al.*, 184 DPR 824 (2012).
[7] Código de Ética Profesional, 4 LPRA Ap. IX.

demandada, al representarla simultáneamente en calidad de demandante y en calidad de tercera demandada. Argumentaron, además, que la falta de una notificación adecuada de la demanda enmendada, junto con todos los anejos a los que hace referencia, y la ausencia de parte indispensable acumulada adecuadamente viola el debido proceso de ley y hace nulo el proceso continuado posteriormente, debido a que dichos actos afectan la jurisdicción del tribunal.

Evaluada dicha moción, el TPI emitió una Resolución declarándola "No Ha Lugar".

En desacuerdo, los peticionarios acuden ante nos mediante el recurso de epígrafe y señalan que el TPI cometió los siguientes errores:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA MOCIÓN DE DESCALIFICACIÓN ANTE EL INSALVABLE CONFLICTO DE INTERESES DERIVADO DE LA ACCIÓN DE REPRESENTAR SIMULTÁNEAMENTE A LA TERCERA DEMANDADA ACUMULADA COMO DEMANDANTE MEDIANTE SUSTITUCIÓN DE PARTE, ABUSANDO DE SU DISCRECIÓN, ERRANDO EN LA APLICACIÓN DE LA NORMA Y VIOLANDO EL DEBIDO PROCESO DE LEY.

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL AUTORIZAR Y APROBAR LA DEMANDA ENMENDADA PARA LA SUSTITUCIÓN DE PARTE, PERMITIENDO LA INDEBIDA ACUMULACIÓN DE PARTE, DE LA TERCERA DEMANDADA, SIMULTÁNEAMENTE COMO DEMANDANTE, OCUPANDO POSICIONES PROCESALES ANTAGÓNICAS, ABUSANDO DE SU DISCRECIÓN, ERRANDO EN LA APLICACÍON DE LA NORMA Y VIOLANDO EL DEBIDO PROCESO DE LEY.

Se les otorgó término a las partes recurridas para expresarse, pero no lo hicieron. Luego de la comparecencia de los peticionarios y evaluado su escrito estamos en posición de resolver.

-II-

A.

El *certiorari* es un vehículo procesal extraordinario mediante el cual un tribunal de mayor jerarquía puede revisar discrecionalmente una decisión de un tribunal de menor jerarquía.[8] Al respecto, el expedir o no el auto de

---

[8] *Caribbean Orthopedics v. Medshape et al.,* 207 PDR 994, 1004 (2021); *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020); *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2016).

*certiorari* descansa en la sana discreción del foro apelativo.[9] Se ha definido discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera."[10] Es importante destacar que dicha discreción no es absoluta y no significa que en el ejercicio de discreción se pueda hacer abstracción del resto del derecho. Esto anterior constituiría un abuso de discreción.[11]

La Regla 52.1 de Procedimiento Civil[12] delimita las instancias en las cuales el Tribunal de Apelaciones ha de intervenir con las determinaciones del TPI. En lo pertinente dispone que:

> [...]
>
> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

Ahora bien, en *Job Connection Center v. Sups. Econo*[13], el Tribunal Supremo de Puerto Rico, en adelante TSPR, decretó que, por las repercusiones que acarrea para una parte coartar el derecho a revisar una orden de descalificación, las mismas son revisables conforme a la Regla 52.1 de Procedimiento Civil[14], ya que esperar a la apelación constituiría un fracaso a la justicia.

---

[9] *García v. Padró*, 165 DPR 324, 334 (2005).
[10] Id.; *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990); *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964).
[11] *García v. Padró, supra*; *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).
[12] Regla 52.1 de las Reglas de Procedimiento Civil de 2009 (32 LPRA Ap. V)
[13] *Job Connection Center v. Sups. Econo*, 185 DPR 585, 601 (2012).
[14] Regla 52.1 de las Reglas de Procedimiento Civil de 2009, *supra.*

Una vez establecida la facultad para revisar la determinación del foro primario, la Regla 40 del Reglamento del Tribunal de Apelaciones[15] establece los siguientes criterios a considerar al momento de hacer la determinación de expedir o no un auto de *certiorari*:

(a)   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(b)   Si la situación de hechos planteada es la más indicada para el análisis del problema.

(c)   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(d)   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(e)   Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(f)   Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(g)   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[16]

No obstante, esto no constituye una lista exhaustiva y ninguno de los criterios es determinante por sí solo.[17] Como norma general, el tribunal apelativo solo intervendrá con las determinaciones interlocutorias discrecionales procesales del TPI cuando este haya incurrido en arbitrariedad o en un craso abuso de discreción o en una interpretación o aplicación errónea de la ley.[18] Otros factores a considerar son la corrección de la decisión recurrida y la etapa del procedimiento en que es presentada, con el fin de cerciorarse de que no se ocasione "un fraccionamiento indebido o una dilación injustificada del litigio."[19]

**B.**

La Regla 16.1 de Procedimiento Civil[20] define parte indispensable como aquella persona que tenga "un interés común sin cuya presencia no pueda adjudicarse la controversia." "[L]a doctrina de parte indispensable se enfoca en el interés real e inmediato que pueda tener esa parte en la controversia y

---

[15] Regla 40 del Reglamento del Tribunal de Apelaciones (4 LPRA Ap. XXII-B).

[16] *Id.*

[17] *García v. Padró, supra.* (Citando a H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560)

[18] *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009).

[19] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

[20] Regla 16.1 de las Reglas de Procedimiento Civil de 2009 (32 LPRA Ap. V).

que pueda verse afectado si no se le permite participar en el pleito."[21] Por tal razón, estas personas se acumularán como partes demandantes o demandadas, según corresponda. La ausencia de parte indispensable incide en la jurisdicción del tribunal sobre dicha persona y se ha determinado que su ausencia puede tener como consecuencia la desestimación de la acción.[22]

Por otro lado, lo procedente cuando muere una parte durante la tramitación de un pleito, y el pleito o la reclamación no se extingue por ello, es su sustitución. La Regla 22.1 de Procedimiento Civil[23] dispone sobre lo relativo a la sustitución de parte por razón de muerte. Esta Regla establece que cuando una de las partes dentro de un pleito fallece, y por ello la acción no queda extinguida, cualquiera de las partes o sus abogados tendrán un término de 30 días para notificarlo al tribunal, contados a partir de que se tenga conocimiento del hecho. El tribunal tendrá 90 días, desde dicha notificación, para ordenar la sustitución de la parte fallecida por las *partes apropiadas*. En cuanto a las partes apropiadas, es el derecho sustantivo de cada caso lo que dará lugar a la determinación de quien es la parte idónea para sustituir al causante.[24] De modo que, se enmendará la demanda con el único fin de incluir las nuevas partes al pleito.[25] Cabe destacar que la sustitución no afecta los derechos sustantivos de las partes, si no que la parte que sustituye se coloca "en los mismos zapatos" que la parte sustituida.[26]

Se ha determinado que los herederos son partes indispensables en una acción donde su causante era parte.[27] Por tal razón, como regla general, los herederos vienen llamados a sustituir a un causante dentro de un pleito instado en vida que no se extingue con su muerte.[28] Sin embargo, el TSPR consideró una excepción en el caso *Vilanova et al. v. Vilanova et al.*[29]: que los herederos sean parte contraria dentro del mismo pleito. Sobre este particular,

---

[21] *García Colón et al. v. Sucn. González,* 178 DPR 527, 548 (2010).
[22] *Id,* pág. 549.
[23] Regla 22.1 de las Reglas de Procedimiento Civil de 2009 (32 LPRA Ap. V).
[24] *Vilanova et al. v. Vilanova et al.,* supra, pág. 838.
[25] Regla 22.1 de las Reglas de Procedimiento Civil de 2009, *supra.*
[26] *Vilanova et al. v. Vilanova et al.,* supra, pág. 838; *Pereira v. IBEC,* 95 DPR 28, 66 (1967); *Lluch v. España Services Sta.,* 117 DPR 729, 750 (1986).
[27] *Vilanova et al. v. Vilanova et al.,* supra, pág. 843.
[28] *Id.*
[29] *Id.*

el TSPR ha expresado que "los herederos *no demandados* del causante [...] deben ser los que lo sustituyan como parte demandante".[30] (Citas omitidas) Permitir que un heredero demandado sea, a su vez, demandante, crearía "un conflicto insalvable que se convertiría en un acto de omnipresencia jurídica".[31]

## C.

Todo abogado tiene la obligación de precaver el conflicto de intereses, tanto en la realidad como en la apariencia.[32] Así las cosas, el abogado "debe de cuidarse de que sus actuaciones no den margen a la más leve sospecha de impropiedad".[33] En caso de duda sobre la existencia de un conflicto de interés, es deber del abogado renunciar a la representación legal del cliente afectado o potencialmente afectado.[34] Para que nazca la obligación de renunciar a la representación del cliente, "el conflicto no tiene que estar establecido claramente, basta con que el conflicto sea potencial."[35]

Así las cosas, y como lo establece el Canon 21 del Código de Ética Profesional[36], es "éticamente insostenible que un abogado ostente la representación simultánea o sucesiva de partes con potencial conflicto de intereses o con intereses encontrados."[37] La representación simultánea, como la sucesiva, quebrantan el deber de lealtad e impiden una representación adecuada y transparente.[38] Por un lado, la representación simultánea es aquella donde el letrado "tiene que defender aquello a lo cual debe oponerse en cumplimiento de sus obligaciones hacia otro cliente suyo."[39] Para que exista este tipo de representación, es imperante que exista una relación abogado-cliente dual. Por otro lado, en la representación sucesiva adversa, el

---

[30] *Id.*

[31] *Id,* pág. 844.

[32] *In re Bonilla Rodríguez,* 154 DPR 684, 696 (2001).

[33] *Id.*; *In re Rojas Lugo,* 114 DPR 687, 690 (1983).

[34] *In re Bonilla Rodríguez,* supra, pág. 696; *In re Toro Cubergé,* 140 DPR 523, 533 (1996).

[35] *Id.,* pág. 694; *Fed. Pesc. Playa Picúas v. U.S. Inds. Inc.,* 135 DPR 303, 319 (1994); *Sánchez Rodríguez v. López Jiménez,* 116 DPR 172, 190 (1985).

[36] Canon 21 del Código de Ética Profesional (4 LPRA Ap. IX).

[37] *In re Bonilla Rodríguez,* supra, pág. 695.

[38] *In re Báez Genoval,* 175 DPR 28, 39 (2008).

[39] *In re Bonilla Rodríguez,* supra, pág. 691.

abogado representa a un cliente "sobre asuntos que pueden afectar adversamente los intereses de un cliente anterior". [40]

Todo abogado queda impedido de asumir representación simultánea o sucesiva cuando exista entre ellas una relación sustancial que implique intereses adversos.[41] En base al criterio de *relación sustancial,* solo se tiene que demostrar que la controversia legal del pleito en la que el abogado comparece en su contra está sustancialmente relacionada con la materia o causa de acción en la que dicho abogado la representa o representó. Entiéndase, es suficiente con probar: (1) la existencia de una relación previa abogado-cliente, (2) la relación sustancial vigente entre ambas representaciones conflictivas y (3) el efecto adverso que surge de la representación dual.[42] No será necesario probar que se violó el principio de confidencialidad.[43] En lo que respecta a las representaciones simultáneas, el TSPR ha resuelto que el único remedio es que el letrado renuncie a ambas representaciones y no sólo a una.[44]

### D.

Las mociones de descalificación no constituyen una acción disciplinaria, sino que son medidas preventivas para evitar alguna posible violación a los cánones de ética profesional. Por lo tanto, los tribunales de primera instancia pueden evaluar y resolver dichas mociones.[45] En estos casos, no es necesario traer prueba sobre alguna violación ética, sino que la apariencia de impropiedad puede ser utilizada para resolver cualquier duda que surja sobre algún posible conflicto de interés, en favor de la descalificación.[46]

Al evaluar dicha moción, los tribunales deben de tomar en consideración los siguientes elementos: (1) la legitimación activa de quien

---

[40] *Id.*

[41] *Otaño v. Vélez*, 141 DPR 820, 826 (1996); *PR Fuels, Inc. v. Empire Gas Co., Inc.,* 133 DPR 112, 119-120 (1993).

[42] *Id*; *Id.*; *In re Carreras Rovira y Suárez Zayas*, 115 DPR 778, 786 (1984).

[43] *Id,* pág. 791.

[44] *Liquilux Gas Corp. v. Berrios, Zaragoza*, 138 DPR 850, 859 (1995); *Ortíz v. Solíván Miranda*, 120 DPR 559, 561 (1988).

[45] *K-Mart Corp. v. Walgreens of PR, Inc.,* 121 DPR 633, 637-638 (1988); *Liquilux Gas Corp. v. Berríos, Zaragoza,* supra, pág. 864.

[46] *Id.*; *In re Carreras Rovira y Suárez Zayas*, supra, pág. 787.

invoca la descalificación, (2) la gravedad del conflicto de interés involucrado, (3) la complejidad del derecho o los hechos pertinentes a la controversia, (4) el *expertise* de los abogados involucrados, (5) la etapa de los procedimientos cuando surge la controversia de descalificación, (6) el posible efecto de la descalificación en cuanto a la resolución justa, rápida y económica del caso y (7) el propósito de la descalificación, es decir, si está siendo utilizada para dilatar los procedimientos.[47]

**-III-**

Las circunstancias particulares de este caso ameritan la expedición del recurso con el fin de evitar un fracaso a la justicia debido a la aplicación incorrecta de una norma jurídica. Es necesaria nuestra intervención para corregir el error cometido por el TPI al permitir la acumulación indebida de una tercera demandada como demandante, de manera simultánea y en sustitución por razón de muerte. Los peticionarios sostienen que la acumulación de una tercera demandada como demandante sustituyendo por razón de muerte, en un mismo pleito y consecuentemente, la representación legal simultánea de esta en dichas posiciones antagónicas es contrario a derecho. Tienen razón, veamos.

El TSPR ha atendido el supuesto que surge de la controversia ante nos. Entiéndase, cuando los herederos llamados a sustituir a un causante demandante en un pleito son a la vez, los demandados.

Al aplicar la normativa adoptada en *Vilanova et al. v. Vilanova et al.,* supra, y como así lo han expuesto los peticionarios, se puede concluir que permitir que una tercera demandada sustituya a un demandante fallecido, dentro del mismo pleito, resulta en una "aberración jurídica", pues nadie puede demandarse a sí mismo. Esto anterior se convertiría en un acto de omnipresencia jurídica por parte de la tercera demandada. Si bien es cierto que la señora Ríos Maldonado es una heredera del demandante fallecido, su posición original en el pleito como tercera demandada le impiden convertirse

---

[47] *Liquilux Gas Corp. v. Berríos, Zaragoza,* supra, págs. 864-865.

en sustituta de este, por tratarse de posiciones antagónicas una de la otra. Así las cosas, solo pueden sustituir al causante, sus herederos *no demandados* en el pleito. De modo que, los derechos de todos los herederos, incluyendo la tercera demandada, no se ven afectados, debido a que todos están presentes en el pleito, simplemente de lados opuestos. Así las cosas, podrán defender efectivamente sus derechos desde sus respectivas posturas.

Cabe destacar que los peticionarios no nos han puesto en posición de atender el primer señalamiento de error ya que, en el recurso ante nos, faltan documentos esenciales que no fueron incluidos para nuestra revisión. Particularmente, el *"Urgente Escrito Informativo y en Oposición a Solicitud de Descalificación"* presentado por la Lcda. Charlene de León Guevara el 10 de julio de 2023. Sin embargo, como la tercera demandada no puede ser incluida como sustituta del demandante fallecido, su representación legal no estaría ante una representación simultánea que requiera su descalificación. Por todo lo anterior, resulta innecesario atender el primer señalamiento de error por tornarse académico.

**-IV-**

Por lo antes expuesto, se expide el auto de *certiorari* y se modifica la Resolución recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones