# 2006 DTA 38

RECEIVED

MAY 1 2 2006

SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE ARECIBO**
**PANEL VII**

YASMÍN BELÉN CARRILLO
Recurrida

v.

TRANS-OCEANIC LIFE INSURANCE COMPANY
Peticionaria

Núm. KLCE-05-00992

San Juan, Puerto Rico, a 23 de enero de 2006

Panel integrado por su Presidente, el Juez Martínez Torres,
el Juez Brau Ramírez y la Juez Fraticelli Torres

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

La parte peticionaria, Trans Oceanic Life Insurance Company ("*T.O.L.I.C.*"), recurre de una resolución emitida el 3 de junio de 2005 por el Tribunal de Primera Instancia, Sala Superior de Bayamón, en el procedimiento sobre pago de comisiones y daños y perjuicios instado contra T.O.L.I.C. por la recurrida Yasmín Belén Carrillo.

Mediante el dictamen en cuestión, el Tribunal de Primera Instancia denegó una solicitud presentada por T.O.L.I.C. para que se descalificara al abogado de la recurrida, Lcdo. Jesús M. Del Valle Padilla, porque éste es compañero de oficina del Lcdo. Melvin Rosario Crespo, quien, en su capacidad como empleado de la Oficina del Comisionado de Seguros de Puerto Rico, intervino en una investigación del esposo de la recurrida iniciada a instancias de T.O.L.I.C. Alega T.O.L.I.C. que durante dicha investigación ofreció al Lcdo. Rosario información confidencial, pertinente al litigio de autos, lo que descalifica a su oficina para representar a la recurrida.

Mediante resolución emitida el 15 de septiembre de 2005, acogimos el recurso y concedimos término a la recurrida para que compareciera a mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la resolución recurrida.

La parte recurrida ha comparecido por escrito. Procedemos según lo intimado.

### II

T.O.L.I.C. es una corporación organizada bajo las leyes de Puerto Rico, con oficinas principales en Guaynabo, dedicada, entre otras cosas, a la venta de seguros.

Para la fecha de los hechos que dan lugar al presente procedimiento, la recurrida Yasmín Belén Carrillo se desempeñaba como agente de seguros de T.O.L.I.C. La recurrida suscribió un contrato con T.O.L.I.C. en 1984 y se desempeñó como agente de dicha entidad hasta el 3 de julio de 2001, cuando T.O.L.I.C. decidió dar por terminada la relación.

Durante el período en que la recurrida trabajó para T.O.L.I.C., el esposo de la recurrida, Lcdo. Rafael Claudio Holms, se desempeñaba como presidente de T.O.L.I.C. El esposo de la recurrida también terminó su relación de empleo con la peticionaria, aparentemente en una fecha cercana al despido de la recurrida.

Además de sus gestiones en T.O.L.I.C., la recurrida y su esposo se han desempeñado como accionistas y directores de la corporación de seguros All Services Insurance Agency, Inc. (*"A.S.I.A."*). No está claro si estas gestiones fueron contemporáneas con el empleo de los esposos en T.O.L.I.C. o si comenzaron después.

T.O.L.I.C. plantea, en este sentido, que la razón para el despido de la recurrida es que ésta incurrió en conducta lesiva a su relación contractual con T.O.L.I.C., reemplazando innumerables pólizas contratadas con T.O.L.I.C. para colocarlas con otras aseguradoras representadas por la recurrida.

Del récord también se desprende que en 1997, previo a la terminación de la recurrida, T.O.L.I.C. solicitó a la Oficina del Comisionado de Seguros que se investigara la conducta del esposo de la recurrida, Lcdo. Rafael Claudio Homs, relacionado a actuaciones de éste como presidente de T.O.L.I.C. Para la fecha en que se llevó a cabo dicha investigación, el presidente de la Junta de Directores de T.O.L.I.C. lo era el Sr. Nicolás Touma Correa.

Para esta época, el Lcdo. Melvin Rosario Crespo se desempeñaba como ayudante especial del Comisionado de Seguros. El Lcdo. Rosario ocupó dicha plaza del 18 de junio de 2001 hasta el 8 de marzo de 2002.

La recurrida alega que el Lcdo. Rosario no actuaba como abogado en dicha entidad gubernamental. No existe controversia entre las partes, sin embargo, en torno a que las funciones de dicho letrado incluían participar en las investigaciones especiales realizadas por la Oficina del Comisionado.

Como parte de la investigación realizada por la Oficina del Comisionado de Seguros del esposo de la recurrida a solicitud de T.O.L.I.C., en diciembre de 2001 se celebró una reunión en las facilidades de dicha Oficina. A dicha reunión compareció el Sr. Touma, en representación de T.O.L.I.C. Estaba presente el Lcdo. Ralph Rexach, representante legal de la Oficina del Comisionado de Seguros. También estaba presente el Lcdo. Rosario.

Según la declaración jurada del Sr. Touma que obra en récord, en esa reunión, el Sr. Touma procedió a ofrecer a los oficiales de la Oficina del Comisionado de Seguros, incluyendo al Lcdo. Rosario, información sobre las actuaciones específicas del esposo de la recurrida que T.O.L.I.C. entendía justificaban la investigación.

T.O.L.I.C también ha sometido copia de ciertos memorandos, supuestamente enviados por correo electrónico por el Lcdo. Rosario los días 19, 20 y 21 de diciembre de 2001, relacionados a la investigación del esposo de la recurrida que realizaba la Oficina del Comisionado de Seguros.

En el memorando del 19 de diciembre de 2001, el Lcdo. Rosario supuestamente expresaba que:

*"[L]e informo que existe un informe de auditoría preparado que recoge los resultados más importantes de la investigación que, sin duda alguna, acortaría el proceso de investigación sustancialmente. De un examen preliminar del mismo se desprenden crasas violaciones en términos de las actuaciones del ex-presidente sin el consentimiento de la Junta de Directores y sin solicitar autorización al Comisionado de Seguros anterior para realizar ciertos negocios de seguros desde P.R. hacia América Central."*

También se acompañan varios documentos en los que el Lcdo. Rosario firmaba como *"Jefe Unidad de Investigaciones Especiales Antifraude"* de la Oficina del Comisionado de Seguros.

No surge que la Oficina del Comisionado de Seguros hubiera tomado acción sobre la investigación del esposo de la recurrida solicitada por T.O.L.I.C. Aproximadamente para esta misma fecha, sin embargo, la Oficina del Comisionado comenzó a investigar las actuaciones de A.S.I.A., incluyendo el desempeño de la

recurrida como agente de dicha entidad.

En julio de 2002, representada por el Lcdo. Rafael Silva Almeyda, la recurrida instó la presente demanda contra T.O.L.I.C. ante el Tribunal de Primera Instancia, Sala Superior de Bayamón. En su demanda, la recurrida alegó que T.O.L.I.C. había actuado ilícitamente al terminar su contrato y solicitó que se le pagaran las comisiones y otros ingresos dejados de obtener como consecuencia de su terminación.

T.O.L.I.C. contestó la demanda, negó las alegaciones y planteó varias defensas afirmativas. Entre otras cosas, según hemos visto, T.O.L.I.C. alegó que había terminado su relación con la recurrida porque ésta había estado compitiendo deslealmente con T.O.L.I.C.

Posteriormente, las partes condujeron descubrimiento de prueba. Durante este procedimiento, la recurrida anunció que habría de presentar a su esposo como testigo en el caso.

El 4 de junio de 2003, mientras el presente litigio se hallaba pendiente, la Oficina del Comisionado de Seguros emitió una orden contra A.S.I.A., la recurrida, el esposo de ésta y otras partes. En su orden, el Comisionado de Seguros determinó que A.S.I.A. había tramitado y vendido 3,942 pólizas de seguro sin poseer la correspondiente licencia. El Comisionado le impuso una multa a dicha corporación de $394,200. El Comisionado también le impuso una multa de $39,420 a los directores de A.S.I.A., incluyendo a la recurrida y su esposo. Finalmente, el Comisionado revocó la licencia de la recurrida como agente de seguros.

La orden del Comisionado contra la recurrida fue emitida sin haberse celebrado una vista administrativa, la cual fue pautada en una fecha posterior por la Oficina del Comisionado. La recurrida compareció ante el Comisionado de Seguros representada por el Lcdo. Melvin Rosario y por el compañero de oficina de éste, Lcdo. Jesús del Valle, y solicitó que se dejara sin efecto la suspensión de su licencia.

La recurrida también acudió al Tribunal de Primera Instancia, Sala Superior de San Juan, representada por los mismos abogados y solicitó que se emitiera un entredicho provisional y un *injunction* contra el Comisionado de Seguros, para paralizar la suspensión de su licencia, caso KPE-03-1765.

En dicho procedimiento, el Comisionado de Seguros solicitó que se descalificara a los representantes de la recurrida, por haber el Lcdo. Rosario participado en la investigación de los hechos. La recurrida se opuso. Alegó que el Lcdo. Rosario no había tenido participación alguna en la investigación de A.S.I.A. y que la investigación del esposo de la recurrida tampoco estaba relacionada a la orden emitida por la agencia.

Pendiente la solicitud de descalificación presentada por el Comisionado de Seguros en el caso KPE-03-1765, el abogado inicial de la recurrida en el caso de autos, Lcdo. Rafael Silva Almeyda, presentó una solicitud de renuncia a su representación legal.

El 20 de agosto de 2003, la Sala de San Juan del Tribunal de Primera Instancia emitió una sentencia que desestimó la demanda de *injunction* presentada por la peticionaria contra el Comisionado de Seguros, en atención a que la agencia había programado una vista para fines de ese mismo mes para brindar a la recurrida la oportunidad de cuestionar la suspensión de su licencia.

La mencionada vista ante el Comisionado no fue celebrada porque T.O.L.I.C. solicitó intervenir en los procedimientos.

El 23 de septiembre de 2003, el Lcdo. Jesús M. Del Valle compareció al presente litigio para asumir la representación de la recurrida.

Ese mismo día, la Sala de San Juan del Tribunal de Primera Instancia denegó la moción de descalificación presentada por el Comisionado de Seguros. En su resolución, la Sala de San Juan expresó que:

*"El Comisionado de Seguros no ha establecido que existe una relación entre el asunto que nos ocupa y la investigación sobre las actuaciones del esposo de la demandante, Lic. Rafael Claudio Homs, mientras éste fungió como presidente de la Transoceanic Life Insurance Company. Tampoco estableció que el Lic. Melvin Rosario Crespo haya intervenido directa o indirectamente en la investigación que realizó el Comisionado de Seguros de All Services Insurance Agency, Inc. (...“ASIA”).”*

Al momento de emitir su resolución, según hemos visto, el Tribunal de Primera Instancia ya había desestimado la reclamación de la recurrida.

El Comisionado de Seguros finalmente denegó la solicitud de T.O.L.I.C. de intervenir en los procedimientos relacionados a la suspensión de la licencia de la recurrida. Esta denegatoria fue sostenida por este Tribunal, mediante resolución emitida el 23 de noviembre de 2003 en el recurso KLRA-2003-00611.

La desestimación de la demanda de *injunction* presentada por la recurrida ante la Sala de San Juan fue confirmada por este Tribunal mediante sentencia emitida el 16 de enero de 2004, en el recurso KLAN-2003-01140.

Así las cosas, el 10 de mayo de 2004, T.O.L.I.C. presentó una moción en el caso de autos para solicitar la descalificación de los abogados de la recurrida, basada en la intervención del Lcdo. Rosario, mientras trabajaba como ayudante especial del Comisionado de Seguros, en la investigación del esposo de la recurrida. En su moción, T.O.L.I.C. observó que el esposo de la recurrida había sido anunciado como testigo de dicha parte, lo que suponía un conflicto, ya que el Lcdo. Rosario había recibido información confidencial relacionada a la conducta irregular de dicho testigo mientras fungía como ayudante del Comisionado de Seguros.

La moción de T.O.L.I.C. fue acompañada por varios documentos, incluida una declaración jurada suscrita por el Sr. Touma. También ofreció copia de los documentos presentados por la Oficina del Comisionado de Seguros en el caso KPE03-01765 ante la Sala de San Juan del Tribunal de Primera Instancia, incluidos los correos electrónicos supuestamente enviados a sus superiores por el Lcdo. Rosario cuando era funcionado de la agencia.

La recurrida se opuso a la moción presentada por T.O.L.I.C. La recurrida alegó que su esposo no era parte en el procedimiento, por lo que cualquier investigación realizada a éste por la Oficina del Comisionado de Seguros no guardaba relación con los hechos del caso.

La recurrida negó que el Lcdo. Rosario hubiera participado en investigación alguna relacionada con su esposo, si bien no presentó declaración jurada alguna de dicho letrado para contradecir lo aseverado en la declaración jurada prestada por el Sr. Touma. La recurrida también alegó que las copias de los correos electrónicos que había presentado el Comisionado de Seguros en el caso KPE03-01765 y que habían sido supuestamente enviados por el Lcdo. Rosario no aparecían firmados por éste ni habían sido de otro modo autenticados.

La recurrida negó que el Lcdo. Rosario Crespo hubiese actuado como director de investigaciones en la Oficina del Comisionado de Seguros o que, incluso, hubiese trabajado en calidad de abogado en dicha agencia. Adujo que la información supuestamente ofrecida por T.O.L.I.C. no estaba cobijada por ningún privilegio de abogado-cliente.

Finalmente, la recurrida también planteó que el Lcdo. Rosario y su abogado de récord, el Lcdo. del Valle,

realmente no eran socios, sino que meramente compartían sus gastos de oficina.

En apoyo a su oposición, la recurrida presentó una lista de investigaciones especiales en las que había participado el Lcdo. Rosario mientras había trabajado con la agencia que no incluían mención alguna a la investigación del esposo de la recurrida mencionada por T.O.L.I.C.

Luego de otros trámites, el 3 de junio de 2005, el Tribunal de Primera Instancia emitió la resolución recurrida, denegando la moción de descalificación presentada por T.O.L.I.C.

En su resolución, el Tribunal de Primera Instancia determinó que no existía evidencia alguna de que el Lcdo. Rosario hubiera participado de forma directa en una investigación que involucrara a la recurrida ante la Oficina del Comisionado de Seguros, por lo que *"no existe ningún conflicto de intereses en la representación que ostenta la parte demandante en el presente caso."*

Insatisfecha con dicha determinación, T.O.L.I.C. acudió ante este Tribunal.

### III

En su recurso, T.O.L.I.C. plantea que el Tribunal de Primera Instancia erró al denegar su moción de descalificación y al concluir que el Lcdo. Rosario no había participado en ninguna investigación relacionada al esposo de la recurrida.

Como es bien sabido, el Tribunal de Primera Instancia tiene la facultad de ordenar la descalificación de los abogados que participan en un caso. *Meléndez v. Caribbean Int'l News*, 151 D.P.R. 649, 660 (2000); *K-Mart Corp. v. Walgreens of P.R., Inc.*, 121 D.P.R. 633, 637 (1988).

Dicha medida no constituye, como tal, una actuación disciplinaria, las cuales están reservadas al Tribunal Supremo de Puerto Rico, sino que se considera un incidente procesal más en el caso. Se entiende que la facultad de ordenar la descalificación es inherente al poder de los tribunales de Primera Instancia para gobernar los procedimientos ante sí. Véanse, *Meléndez v. Caribbean Int'l News*, 151 D.P.R. a la pág. 660; *Luquilux Gas Corp. v. Berríos, Zaragoza*, 138 D.P.R. 850, 864 (1995); *Fed. Pesc. Playa Picúas v. U.S. Inds., Inc.*, 135 D.P.R. 303, 317 n. 25 (1994); *K-Mart Corp. v. Walgreens of P.R., Inc.*, 121 D.P.R. a la pág. 637.

Al considerar una solicitud a estos fines, debe ponderarse, entre otras cosas: si quien solicita este remedio tiene legitimación para hacerlo, la gravedad del conflicto, la complejidad del derecho o de los hechos pertinentes a la controversia y el *expertise* de los abogados involucrados, la etapa del procedimiento en que surja la controversia y su posible efecto en cuanto a la resolución justa, rápida y económica del caso, y el propósito detrás de la descalificación, esto es, si la solicitud está siendo utilizada para dilatar los procedimientos. *Otaño v. Vélez,* 141 D.P.R. 820, 828 (1996); *Luquilux Gas Corp. v. Berríos, Zaragoza*, 138 D. P.R. a las págs. 864-865.

Al sopesar estos factores, el tribunal deberá considerar, además, el derecho que le asiste a todo ciudadano de escoger con libertad el abogado que lo represente. *Otaño v. Vélez*, 141 D.P.R. a la pág. 828; *Sánchez Acevedo v. E.L.A.,* 125 D.P.R. 432, 438 (1990); *In re: Vélez*, 103 D.P.R. 590, 599 (1975).

Entre otros fundamentos, la descalificación de un abogado puede ser ordenada para evitar conflictos de naturaleza ética. *Meléndez v. Caribbean Int'l News*, 151 D.P.R. a la págs. 660-661; *Luquilux Gas Corp. v. Berríos, Zaragoza*, 138 D.P.R. a la pág. 864.

En el presente caso, según hemos visto, T.O.L.I.C. plantea que el nuevo representante legal de la peticionaria, Lcdo. Jesús del Valle, es compañero de oficina del Lcdo. Melvin Rosario Crespo. T.O.L.I.C.

señala que, cuando se desempeñaba en la Oficina del Comisionado de Seguros como ayudante especial, el Lcdo. Rosario participó en la investigación que realizaba dicha oficina del esposo de la recurrida y que, en su capacidad de ayudante, recibió información confidencial sobre actuaciones irregulares de dicho testigo ofrecida por el Sr. Nicolás Touma, presidente de la Junta de Directores de T.O.L.I.C., quien era la parte promovente de la investigación.

El Art. 3.2 de la Ley de Ética Gubernamental establece, en lo pertinente, que:

*"Ningún funcionario o empleado público revelará o usará información confidencial, adquirida por razón de su empleo, para obtener, directa o indirectamente, ventaja o beneficio económico para él, para un miembro de su unidad familiar o para cualquier otra persona, negocio o entidad."*

3 L.P.R.A. sec. 1822(g).

El Art. 3.7 de la Ley de Ética Gubernamental también establece, en su parte pertinente, que:

*"Ningún ex servidor público podrá ofrecer información, asesorar en forma alguna o representar en cualquier capacidad, ya fuere personalmente o a través de otra persona privada, a cualquier persona de intereses contrarios a los del Estado Libre Asociado de Puerto Rico en aquellos asuntos, acciones, procedimientos o reclamaciones que estuvieron en alguna forma sometidos al conocimiento, estudio, investigación, resolución, decisión, o trámite ante alguna agencia, oficina, dependencia o tribunal del Gobierno de Puerto Rico mientras dichos ex servidores prestaban servicios en esa agencia, oficina, dependencia o tribunal y siempre que dichos ex servidores hubieren tenido que ver directa o indirectamente con dichos asuntos y acciones."*

3 L.P.R.A. sec. 1827(a); véase, además, 26 L.P.R.A. sec. 208(3) (*"[n]inguna persona que hubiere desempeñado el cargo de... ayudante... de la Oficina del Comisionado de Seguros podrá actuar como consejero, abogado, apoderado o agente de una parte que no sea el Estado Libre Asociado de Puerto Rico, sus entidades o dependencias, en cualquier procedimiento ante el Comisionado de Seguros que envuelva un asunto en el cual dicha persona intervino mientras ocupaba el cargo en la Oficina del Comisionado de Seguros"*).

Por su parte, el Canon 21 del Código de Ética Profesional añade, en lo pertinente:

*"No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.*

*La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que pueden afectar adversamente cualquier interés de otro cliente anterior ..., especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueban. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste...".*

4 L.P.R.A. Ap. IX.

Como se conoce, la citada disposición está dirigida a asegurar la lealtad del abogado para con su cliente y evitar que un abogado incurra en la representación de intereses encontrados. *Náter v. Ramos,* 162 D.P.R. ___ (2004), **2004 J.T.S. 135**, a la pág. 96; *In re: Morell, Alcover,* 158 D.P.R. ___ (2003), **2003 J.T.S. 35**, a la pág. 653; *In re: Toro Cubergé,* 140 D.P.R. 523, 529 (1996).

Existe un conflicto de intereses cuando hay alguna circunstancia que impide la representación libre y adecuada por parte del abogado y vulnera la lealtad absoluta que le debe todo abogado a su cliente. *In re: Ortiz Martínez*, 161 D.P.R. ___ (2004), **2004 J.T.S. 69**, a la pág. 956; *In re: Sepúlveda Girón,* 155 D.P.R. ___ (2001), **2001 J.T.S. 157**, a la pág. 391.

El Tribunal Supremo de Puerto Rico ha explicado que el Canon 21 contempla tres situaciones que debe evitar todo abogado para no incurrir en la representación de intereses encontrados, a saber: (1) que, en beneficio de un cliente, se abogue por aquello a lo que el letrado debe oponerse, en cumplimiento de sus obligaciones para con otro cliente, situación que presupone la representación simultánea de dos clientes distintos, cuyos intereses se llegan a oponer; (2) que un abogado acepte la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de un cliente anterior, la cual presupone la representación sucesiva de distintos clientes, cuyos intereses se llegan a oponer; (3) que un abogado acepte una representación legal, o que continúe en ella, cuando su juicio profesional pueda ser afectado por sus intereses personales. *Otaño v. Vélez*, 141 D.P.R. a la pág. 826; *In re: Toro Cubergé*, 140 D.P.R. a las págs. 529-539.

Conforme a lo anterior, se prohíbe la representación sucesiva de clientes con intereses adversos. Este tipo de situación presenta el peligro especial de que el abogado viole el principio de la confidencialidad. *In re: Bonilla Rodríguez*, 154 D.P.R. 684, 693 (2001); *In re: Guzmán*, 80 D.P.R. 713, 724 (1958).

Se pretende salvaguardar y asegurar que los secretos y confidencias que el cliente anterior compartió en el transcurso de su relación con su representante legal no se utilicen posteriormente en su contra. A tales efectos, el deber de lealtad impuesto a los abogados por el Canon 21 prohíbe divulgar los secretos y confidencias que el cliente haya compartido durante el transcurso de sus representaciones pasadas y presentes. *Otaño v. Vélez*, 141 D.P.R. a la pág. 826; *Liquilux Gas Corp. v. Berríos, Zaragoza,* 138 D.P.R. a las págs. 857-858.

Esta última obligación continúa a pesar de haber cesado las relaciones de abogado y cliente. *Robles Sanabria, Ex parte*, 133 D.P.R. 739, 746 (1993).

En estos casos, según ha aclarado el Tribunal Supremo de Puerto Rico, sólo hace falta demostrar una *"relación sustancial"* o adversa entre la controversia legal en la que el abogado comparece actualmente en su contra y la materia o causa de acción en la que dicho abogado representó inicialmente. *In re: Ortiz Martínez*, **2004 J.T.S. 69**, a la pág. 956; *In re: Bonilla Rodríguez,* 154 D.P.R. a las págs. 692-693.

El conflicto de intereses proscrito por el Canon incluye tanto el conflicto de intereses personales como el conflicto de obligaciones. *In re: Bonilla Rodríguez*, 154 D.P.R. a la pág. 694.

No sólo debe evitarse el conflicto de intereses actual, sino también el potencial. La situación no varía por el hecho de que alguien crea que la posibilidad de un conflicto es altamente especulativa. *In re: Bonilla Rodríguez*, **2001 J.T.S. 111**, a la pág. 1,557; *Fed. Pesc. Playa Picúas v. U.S. Inds. Inc.,* 135 D.P.R. a la pág. 319; *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 190 (1985).

No tiene que demostrarse que de hecho ocurrió una violación al principio de confidencialidad. Sólo se requiere que se demuestre que el abogado mantuvo una relación de abogado-cliente con una persona que al tiempo presente tiene una controversia con otra persona que él representa; que la representación legal de su cliente anterior está sustancialmente relacionada con la representación profesional de su cliente actual, y que la representación legal actual resulta adversa a los intereses de su cliente original. *In re: Ortiz Martínez*, **2004 J.T. S. 69**, a las págs. 956-957.

El estándar empleado es objetivo. El abogado no puede aducir, para salvar el conflicto, que no habrá de utilizar las confidencias o secretos de un cliente anterior en perjuicio de éste. *In re: Carreras Rovira y Suárez*

*Zayas,* 115 D.P.R. 778, 791-792 (1984); *In re: Concepción Suárez,* 111 D.P.R. 486, 491 (1981).

El Tribunal Supremo de Puerto Rico ha aclarado:

*"[E]xiste una presunción irrefutable de que información confidencial será utilizada por el abogado que representó anteriormente a un cliente y ahora asume una posición contraria a sus intereses. De todas formas, la apariencia de impropiedad será utilizada para resolver cualesquiera dudas que surjan sobre posible conflicto de intereses, en favor de la descalificación."*

*In re: Carreras Rovira y Suárez Zayas,* 115 D.P.R. a las págs. 791-792.

No es necesario, como tal, que se aporte prueba de una violación, sino que la moción puede ser adjudicada a base de la mera apariencia de impropiedad. *Liquilux Gas Corp. v. Berríos, Zaragoza,* 138 D.P.R. a la pág. 864.

En caso de dudas, el abogado está obligado a renunciar. *In re: Toro Cubergé,* 140 D.P.R. a la pág. 533; *Liquilux Gas Corp. v. Berríos, Zaragoza,* 138 D.P.R. a la pág. 864; *Fed. Pesc. Playa Picúas v. U.S. Inds., Inc.,* 135 D.P.R. a la pág. 319.

En este tipo de casos, la descalificación procede, no sólo contra el abogado que representó a la parte en el pleito anterior, sino también contra el grupo de abogados o bufete donde labora éste. *In re: Bonilla Rodríguez,* 154 D.P.R. a la pág. 693; *Robles Sanabria, Ex Parte,* 133 D.P.R. a la pág 752; *P.R. Fuels, Inc. v. Empire Gas Co., Inc.,* 133 D.P.R. 112, 121 (1993).

En la situación de autos, según hemos visto, el conflicto señalado por T.O.L.I.C. obedece a que, actuando como funcionario de la Oficina del Comisionado de Seguros, el Lcdo. Rosario recibió información de parte del Sr. Nicolás Touma, presidente de la Junta de Directores de T.O.L.I.C., sobre actuaciones irregulares realizadas por el esposo de la recurrida cuando trabajaba para T.O.L.I.C. La información fue ofrecida por T.O.L.I.C. de forma confidencial, como parte de las gestiones de dicha entidad para que se investigara la situación.

No cabe duda alguna de que, al momento de recibir la información ofrecida por el Sr. Touma, el Lcdo. Rosario ocupaba una posición que resultaba adversa a la del esposo de la recurrida. De hecho, en su memorando enviado el 19 de diciembre de 2001 a sus supervisores, el Lcdo. Rosario concluyó que el esposo de la recurrida había incurrido en *"crasas violaciones"* a las normas de ley.

El esposo de la recurrida ha sido anunciado como testigo de dicha parte en el caso de autos. Es anticipable que dicho testigo pueda ser confrontado e impugnado por T.O.L.I.C. a base de las actuaciones irregulares cometidas por él mientras era oficial de la empresa. Su imparcialidad también podría ser cuestionada a base de que T.O.L.I.C. solicitó una investigación sobre su persona.

El conocimiento adquirido por el Lcdo. Rosario sobre las quejas ofrecidas por T.O.L.I.C. a la Oficina del Comisionado de Seguros, de este modo, posiblemente le permitiría a la recurrida anticipar algunas de las líneas de contrainterrogatorio que podrían ser utilizadas por T.O.L.I.C. Existe la posibilidad, en otras palabras, que la información confidencial brindada por T.O.L.I.C. al Comisionado de Seguros como parte de la solicitud de dicha parte de que se investigara al esposo de la recurrida, sea empleada por la recurrida para adelantar su interés.

Somos de la opinión de que la presente situación plantea, cuando menos, un conflicto potencial de interés que requiere la descalificación de los abogados de la recurrida.

La parte recurrida alega que el Lcdo. Rosario nunca intervino, como tal, en investigación del esposo de la recurrida. La parte recurrida, sin embargo, no ha refutado la declaración bajo juramento ofrecida por el Sr.

Touma, en la que dicho funcionario de T.O.L.I.C. expone que participó en una reunión celebrada el 19 de diciembre de 2001 en la Oficina del Comisionado de Seguros en la que estaba presente el Lcdo. Rosario y donde T.O.L.I.C. ofreció información confidencial a la agencia sobre cierta conducta del esposo de la recurrida que T.O.L.I.C. entendía que era impropia.

La declaración jurada del Sr. Touma aparece corroborada por las copias de los correos electrónicos enviados por el propio Lcdo. Rosario a sus supervisores relacionados a la investigación.

La parte recurrida alega que dichos documentos no aparecen firmados por el Lcdo. Rosario ni han sido debidamente autenticados, pero observamos que los mismos fueron presentados al Tribunal en el caso KPF2003-1765 por la Oficina del Comisionado de Seguros como récords oficiales de dicha agencia. Véase, la Regla 65(H) de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 65(H).

El hecho de que el Lcdo. Rosario se vea forzado a asumir una posición adversa frente a la agencia, su anterior patrono, con relación a la exactitud de los récords en cuestión es un indicio elocuente de la existencia del conflicto mencionado.

La recurrida alega que el Lcdo. Rosario no actuó como abogado de la Oficina del Comisionado de Seguros y que la información ofrecida por T.O.L.I.C. a dicha agencia no está protegida por el privilegio de abogado-cliente. Véase, *In re: Avilés, Tosado*, 157 D.P.R. ___ (2002), **2002 J.T.S. 130**, a las págs. 239-240 (aplicación del Canon 21 requiere la existencia de relación abogado-cliente).

Se nos hace difícil sostener la separación de funciones sugerida por dicha parte. Lo cierto es que existe una fuerte política pública en nuestra jurisdicción que persigue proteger la confidencialidad de las personas que acuden a los organismos gubernamentales con señalamientos de conducta impropia o ilegal de funcionarios públicos u otras personas. 1 L.P.R.A. sec. Secs. 601 y ss. (Supl. 2005); 1 L.P.R.A. secs. 611 y ss. (Supl. 2005).

Consideramos que dicha política pública se vería seriamente menoscabada si se permitiera que la información confidencial ofrecida a una agencia para fines de alguna investigación pudiese ser posteriormente utilizada para otros propósitos por los funcionarios públicos.

La Ley de Ética Gubernamental, según hemos visto, establece que *"[n]ingún funcionario o empleado público revelará o usará información confidencial, adquirida por razón de su empleo, para obtener, directa o indirectamente, ventaja o beneficio económico para él, para un miembro de su unidad familiar o para cualquier otra persona, negocio o entidad."* 3 L.P.R.A. sec. 1822(g).

Opinamos que similar limitación opera, aunque la persona ya no labore para la agencia.

En el presente caso, T.O.L.I.C. se queja de que, en su posición como empleado de la Oficina del Comisionado de Seguros y ocupando una posición adversativa frente al esposo de la recurrida, el Lcdo. Rosario tuvo acceso a información confidencial, ofrecida por T.O.L.I.C. sobre actuaciones irregulares del esposo de la recurrida. Existe, a nuestro juicio, un conflicto potencial entre, por una parte, el interés de la agencia y de T.O.L.I.C. de que la parte investigada no tenga acceso a dicha información y, de otra parte, la obligación de los abogados de la recurrida de desplegar todos sus esfuerzos para proteger los intereses de ésta, incluida la adecuada preparación de sus testigos para el juicio.

La recurrida señala que la Sala de San Juan del Tribunal de Primera Instancia denegó la moción de descalificación presentada por la Oficina del Comisionado de Seguros contra los abogados de la recurrida en el caso KPE2003-1765. En dicho caso lo que se cuestionaba eran las sanciones impuestas a la recurrida y su marido por la Oficina del Comisionado de Seguros como resultado de las actuaciones de A.S.I.A. Del expediente se

desprende que el Lcdo. Rosario no tuvo intervención alguna con la investigación realizada por la agencia sobre dicha corporación. Tampoco surge que la información ofrecida al Comisionado por T.O.L.I.C. relacionada al esposo de la recurrida tuviese conexión con los procedimientos relacionados a A.S.I.A. De haberla tenido, concluiríamos que la decisión de la Sala de San Juan del Tribunal de Primera Instancia fue errónea.

La recurrida alega que el Lcdo. Rosario Crespo no es compañero de oficina de su abogado de récord, sino que meramente comparten gastos. Lo cierto es que, contrario a dicha alegación, tanto el Lcdo. Rosario como el Lcdo. del Valle comparecieron en representación de la recurrida en los procedimientos ante el Tribunal de Primera Instancia en el caso KPE2003-1765. En dicho caso, el Lcdo. Rosario Crespo suscribió documentos bajo la rúbrica de *"Bufete Jesús M. Del Valle."* (Véase, la pág. 131 del apéndice al recurso de *certiorari*).

La norma en estos casos es que debe presumirse que los abogados dentro de la misma oficina han compartido la información, por lo que la existencia de un conflicto de interés requiere la descalificación de todos. *In re: Bonilla Rodríguez,* 154 D.P.R. a la pág. 693; *Robles Sanabria, Ex Parte,* 133 D.P.R. a la pág. 752; *P.R. Fuels, Inc. v. Empire Gas Co., Inc.,* 133 D.P.R. a la pág. 121.

En el presente caso, a diferencia del Tribunal de Primera Instancia, consideramos que debe descalificarse al abogado de la recurrida.

Por los fundamentos expresados, se expide el auto solicitado y se revoca la resolución recurrida. En su lugar, se dicta sentencia para ordenar la descalificación del Lcdo. Jesús del Valle como abogado de la parte recurrida. Dicha parte tendrá un término de treinta días para anunciar su nueva representación en el caso. Se devuelve el asunto al Tribunal de Primera Instancia para procedimientos consistentes con este dictamen.

Lo pronunció y lo manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones